[Civ. No. 10109.  First Appellate District, Division Two.—January 29, 1936.]

PRIVATE INVESTORS, INC. (a Corporation), Respondent, v. HOMESTAKE MINING COMPANY (a Corporation) et al., Petitioners and Appellants.

HOMESTAKE MINING COMPANY (a Corporation) et al., Petitioners, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

490

Garret W. McEnerney for Petitioners.

Ackerman, Wayland & Mathews for Respondents.

NOURSE, P. J.—Petitioner asks for a writ of *supersedeas* to restrain the enforcement of a mandate of the superior court permitting the inspection of its corporate records.

The proceeding below was instituted by a shareholder after demand and refusal, and followed the procedure outlined in section 355 of the Civil Code. An alternative writ of *mandamus* was issued when the complaint was filed, and on the return day the corporation appeared by demurrer alone. The demurrer was argued and submitted on briefs, and about thirty days thereafter an order was entered overruling the demurrer and directing the writ to issue. This order read in part, "and IT FURTHER APPEARING that no time within which to file an answer to said petition for writ of mandate was reserved or requested by said defendants . . . that no time was or has been granted to said defendants . . . within which to answer . . . and that said defendants have failed to show cause why the acts and things required of them and each of them by said alternative writ of mandate should not be done". A peremptory writ was thereupon issued, from which the defendants have given notice of their appeal.

In this application for *supersedeas,* the petitioners rest upon the statement that they are appealing in good faith and that they are *entitled* to the writ so that they may enjoy the fruits of their appeal if the judgment is reversed. This falls far short of what petitioners must show before a *supersedeas* can issue. Section 949 of the Code of Civil Procedure provides that an appeal "does not stay proceedings, without a writ of *supersedeas* . . . where it orders a corporation . . . to give a person adjudged to be a . . . stockholder . . . a reasonable opportunity to inspect or take copies of such books . . . " The general rule applicable to other proceedings in *mandamus* is that an appeal from the judgment stays the mandate until the proceedings on appeal are terminated. There is thus found in this section of the code a plain declaration of the legislature that proceedings of this character are summary, and that the right of inspection should not be suspended during the long process of an appeal except for some special reason. Hence, it is not sufficient to say that the

appeal is taken in good faith or that, if no stay is granted, the appellants would lose the fruits of a reversal. This could be said of every appeal that is taken from a judgment of that character, and if the appellate courts were required to issue a writ of *supersedeas* on such a showing, the whole purpose of section 949 would be defeated.

■ *Supersedeas* is not a writ of right, but is one resting in the discretion of the appellate court. (23 Cal. Jur., pp. 984, 985; *Kerr* v. *Kerr*, 126 Cal. App. 160 [14 Pac. (2d) 316] ; *Bardwell* v. *Turner*, 219 Cal. 228 [25 Pac. (2d) 978].) It is issued in aid of the appellate jurisdiction, and finds sanction in sections 4 and 4b of article VI of the Constitution. Neither the code nor the rules of court provides any procedure for the application, hearing or granting of the writ, and not much light is found in the decisions. It may be accepted, however, as a general principle that, since the only power to issue the writ is when it is necessary to aid the appellate jurisdiction of the court, it is incumbent upon him who seeks it to carry the burden of showing that necessity.

■ Furthermore, since the issuance of the writ is discretionary, it is incumbent upon the applicant here to show that substantial questions will be presented upon the appeal (*Bardwell* v. *Turner*, 219 Cal. 228 [25 Pac. (2d) 978]) ; that some special reason exists, differing from the ordinary suit to compel an inspection of the records, why the judgment of the trial court should be stayed pending the appeal (*McKenzie* v. *Los Angeles Life Ins. Co.*, 88 Cal. App. 259 [263 Pac. 338]) ; and that his is an exceptional case presenting exceptional circumstances which would justify the appellate court in setting aside the provisions of section 949. (*People* v. *Piazza*, 59 Cal. App. 43, 44 [209 Pac. 1017].)

■ The position assumed by the petitioners here is that "as a matter of right" they were entitled to answer over after their demurrer was overruled, and, therefore, "as a matter of right" they are entitled to a *supersedeas*. Petitioners are wrong in both instances. There is no absolute right to answer over in any civil case. Section 472 of the Code of Civil Procedure provides: "A demurrer is not waived by filing an answer at the same time; and when the demurrer to a complaint is overruled and there is no answer filed, *the court may, upon such terms as may be just, allow an answer to be filed.*" The special provisions of the code

applicable to *mandamus* are found in sections 1084 to 1097, inclusive. Section 1109 provides that "except as otherwise provided in this title" the provisions of part two of the code shall constitute the rules of practice in these special proceedings. Section 1088 provides two methods by which a writ of mandate may be granted—one following a hearing in response to an order to show cause based upon the petition and an alternative writ, the other following a hearing upon motion of the petitioner in response to a notice of motion based upon the petition filed. Section 1089 provides that, on the return day or the day on which the application is noticed, the defendant "may answer the petition *under oath*" in the same manner as an answer to the complaint. Section 1090 permits the court to submit to a jury issues of fact essential to the determination when such issues are raised by the answer. Section 1094 provides that, "If no answer be made, the case must be heard on the papers of the applicant. *If the answer raises only questions of law*" the court must proceed to hear the argument of the case.

With these statutory provisions in mind, a reference to the decisions discloses that there has been no misconception of their meaning. Section 472 of the code, and section 67 of the Practice Act which preceded it, have been uniformly held to confer upon the trial court discretion to grant or deny leave to answer after a demurrer is overruled. In the early case of *Thornton* v. *Borland,* 12 Cal. 438, Justice Field laid down the rule as follows: "The court, as a matter of course, regarded the demurrer as frivolous, and overruled it. Proof was then made of the claim of the plaintiff, and judgment rendered in his favor; and the objection made by the appellant is, that leave was not given to put in an answer. The reply to the objection is found in the statute, which provides that in overruling a demurrer to the complaint, 'the Court may, upon such terms as shall be just, and upon payment of costs, allow the defendant to file an answer'. (Practice Act, sec. 67, as amended in 1854.) The allowance rests in the discretion of the court below, subject to review, of course, in case of its arbitrary or unreasonable exercise. The exercise of the power must in a great degree depend upon the special circumstances of each case, and be so governed as to prevent delays and to promote justice. The party whose demurrer is overruled, ought to be required to obtain leave to answer,

to satisfy the court that he has a substantial defense on the merits to the action. In the case at bar, nothing of the kind was done; no application for leave to answer was made, and no possession of any meritorious defense was asserted." It would serve no purpose to cite the numerous cases which have followed this rule. It is sufficient to say that it has been accepted and approved by all the decisions which have come to our attention.

The rule of these cases is conceded by petitioners, but their answer is that when leave to answer is denied, an abuse of discretion must be "presumed". This theory is not supported by any statute or rule of decision. To the contrary, the courts will always presume that another court acting within its jurisdiction has acted with judicial discretion. If the claim is made that such discretion has been abused, some showing must be made to rebut that presumption. This must be so because we are required to give to every valid act of the legislature the purpose and meaning which the legislature intended. It must be manifest that, when the legislature gave to the trial court power to grant leave to answer over under such terms as it may impose, the legislature contemplated that cases might arise when such leave might be denied. There is no real difference between such a situation and one arising when leave is asked to amend a complaint or answer. Cases could be cited holding that denial of such leave was, under the facts of the particular case, an abuse of discretion, but in such a case an appellate court would never presume that the denial was an abuse of discretion.

That brings us to the vital point raised in this proceeding. It may be briefly stated as follows: that sound judicial action rests upon facts and circumstances and not upon theories or conjectures. We are asked to declare that the trial court abused its discretion in entering the judgment upon the demurrer and this request is based upon the mere conjecture that the defendants had a meritorious defense which they desired to offer. There is not a word in the petition for *supersedeas* which tenders that issue. Full opportunity was given at the hearing of the application to make some showing of the essential elements necessary before this writ could issue, but petitioners have made no effort to make such showing at any time. The only language in the petition which bears on the subject is the statement that if defend-

ants had been allowed to answer in the court below, it was their "desire and purpose . . . to tender all defenses that were available to them". This falls far short of what our common practice knows as a declaration of merits. All the defenses available may have been nothing more than questions of law which section 1094 provides may be raised in the answer. If any presumptions are to be indulged in here, we must presume, in giving verity to the judgment, that such fact was made known to the trial court before the judgment was entered. But it is not to be presumed that if the defendants had made known to the trial court that they had a *meritorious* defense, leave to raise the issue would not have been granted. If they had alleged in their application filed herein, or had shown by affidavit or otherwise, that they had a meritorious defense, their standing might be different here also.

This feature aptly illustrates the whole topic of the foregoing discussion. If, at the hearing in the court below, the defendant had tendered a proposed answer which admitted or failed to deny the allegations of fact in the complaint which would entitle the plaintiff to an inspection of the books under section 355 of the Civil Code, and which set up defenses which raised questions of law alone or which were irrelevant to the issues, no court would be justified in holding that the trial court had abused its discretion in refusing leave to file such answer. On the other hand, if the defendants had shown that they had a meritorious defense, it is fair to assume that the trial court would have given them leave to answer and to defend upon the merits. It is not a sufficient answer to this statement that the judgment was entered within a few days after the demurrer was overruled. Though the defendants procured a stay of execution they did not request leave to answer, but speedily filed a notice of appeal which took the whole matter out of the jurisdiction of the trial court.

We have refrained as far as possible from saying anything herein which might be treated as determinative of the issues to be raised on the appeal from judgment. But, bearing in mind the rule of the cases heretofore cited, it becomes necessary to examine the proceedings for the purpose of determining whether the appeal presents "substantial questions" or has "possibilities". This we do to the same

extent as we examine a record upon motion to dismiss an appeal made under subdivision 3 of Rule V. With these limitations in mind, we have examined the complaint and demurrer in the proceeding below to determine whether the appeal on its face presents "substantial" or "debatable" questions. █ The complaint pleads all the facts referred to in section 355 of the Civil Code as essential to an assertion of the right to inspect the corporate books—the incorporation of the defendant, the issuance of shares of stock, that plaintiff is a shareholder, that demand was made upon the proper officers and refused. It then pleaded four reasons why plaintiff desired to inspect the books—the disparity in value between the published annual report of the corporation and the market value or price of the outstanding stock; to determine whether the outstanding stock was held by a few shareholders who dictated the accounting policies; to determine whether the relation of the directors was against the interests of the minority stockholders, and to ascertain the present value of the stock owned by the plaintiff. The demurrer was both general and special. Though the briefs filed in the trial court are not before us, the respondents herein state, and their statement is not challenged, that this demurrer raised four points—failure to allege that plaintiff's rights as a shareholder were likely to be seriously prejudiced; failure to allege that the application does not have the marks of a fishing expedition, failure to allege a *bona fide* dispute between the parties, and failure to allege that the purposes set forth were "reasonably related to his interests as a shareholder".

Manifestly none of the first three grounds of the demurrer presents a debatable question. Section 1085 of the Code of Civil Procedure declares that the writ of mandate shall issue to compel a corporation to perform "an act which the law specially enjoins". █ Section 355 of the Civil Code specially enjoins a corporation to permit a shareholder to inspect its books when the conditions mentioned in that section exist. There is nothing in the section which provides that this right may be denied unless a *bona fide* dispute has arisen, or unless the rights of the shareholder have been seriously prejudiced, or if the shareholder is on a "fishing expedition". Cases have been written holding that the court may, in the exercise of its discretion, deny a writ of mandate

if it finds that the desired inspection is but a "fishing expedition", but we are aware of no case holding that the shareholder must anticipate and plead the affirmative defenses of the corporation.

The last ground assigned is of even less merit. The complaint pleaded four purposes showing why the shareholder desired to inspect the books. It did not plead that any one of these purposes was "reasonably related to his interests as a shareholder". Two of the reasons alleged have been held sufficient as reasonably related to such interests. (*Hartman* v. *Bandini Petroleum Co.*, 107 Cal. App. 659 [290 Pac. 900].) Any one of the four would have been sufficient basis for the demand. Hence, the additional allegation that any one of these alleged purposes was "reasonably" related to the shareholder's interest would have been but a conclusion of law.

For these reasons we are compelled to conclude that the demurrer does not present substantial or debatable questions, and that it appears on the face of the record to have been interposed solely for the purpose of delaying the proceedings. Entertaining these views, it would be an abuse of discretion to suspend execution of the judgment pending determination of the appeal.

The application is denied and the preliminary writ is discharged.

Sturtevant, J., and Spence, J., concurred.

An application by petitioners to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 26, 1936.