[Civ. No. 22142.    Second Dist., Div. One.    Jan. 29, 1957.]

MAXINE SALTONSTALL, Respondent, v. PHILIP LEVERETT SALTONSTALL, Appellant.

Henry B. Ely and Dean M. McCann for Appellant.

Arthur N. Greenberg and Hahn, Ross & Saunders for Respondent.

FOURT, J.—The defendant and appellant herein petitioned for a writ of supersedeas to stay the orders of the trial court pending an appeal, and further that a temporary stay, pending the granting or denial of the writ issue.

An action in divorce was filed on or about February 16, 1948, in Los Angeles County by Maxine Saltonstall, hereinafter referred to as the mother, against Philip Leverett Saltonstall, hereinafter referred to as the father. A child, Lee Bliss Saltonstall, was born as the issue of the marriage on March 23, 1947. At the time of the divorce action, on July 1, 1949, the custody of the child was awarded to the mother, with the right of reasonable visitations to the father, and the father was ordered to pay $250 per month to the mother for the support and maintenance of the child. The mother had the full custody of the child from the date of the divorce decree, and the father apparently never visited with or saw or wrote to the child, nor requested the privilege of visiting or seeing her, nor did he communicate with or attempt to communicate with the mother about the child at any time until the mother filed an order to show cause for an increase in

the child's support and maintenance, or or about September 20, 1955. On October 12, 1955, the father filed an order to show cause why the custody of the child should not be changed from the mother to the father. After various continuances, the matter was heard by a commissioner on May 3, 1956, July 23, 1956, and October 17, 1956.

A résumé of the facts as developed by the hearing on May 3, 1956, is as follows: The father is about 56 years of age, retired, living near La Jolla, California, in his own home. He receives an income of about $15,000 a year from two trusts in which he is the beneficiary. The mother, for the past six years or more, has resided with the child in various places in Mexico, including Mexico City, Cuernevaca, Acapulco, and various resort communities, because, as she stated, she liked to live in such surroundings. The child was placed in various schools while in Mexico and once was in the American Institute. However, the mother removed the child from that school and placed her in another because she "couldn't afford to keep her any longer," although the cost was only $89 per month, and she was receiving $250 each month from the father for the child's support and maintenance. The mother did not admit to the earning of any monies of any consequence; she had no funds of her own and no source of income, and apparently lived entirely from the $250 which was paid to her for the support and maintenance of the child. The commissioner found that the mother was a fit and proper person to have the custody of the child; further, it was found that the father strenuously objected to the child being reared in Mexico, and it was determined that it would be to the best interests of the child that she be reared in the United States. The father was remarried to Beatrice Saltonstall, who was found by the commissioner to be a suitable person to supervise and care for the child. It was further found that if the father had the custody of the child, she would be enrolled in a suitable private school and spend the balance of her time in the home of her father. The commissioner determined that it was necessary for the child to spend some time in the father's home to ascertain whether the father and stepmother would be acceptable to the child, and whether the child would be happy in the father's home. Also, it was determined that the mother should be given an opportunity to establish a suitable home in the United States. The commissioner further determined that the father should have the physical possession of the child from June 1, 1956 to July

15, 1956, and that the matter should then be continued to the middle of July for further hearing. The court ordered on May 3, 1956, pursuant to the recommendation of the commissioner, that the application of the mother for an increase in support and maintenance for the child be denied; that the application of the father for change of custody of the child to him be continued to July 23, 1956, for further hearing, and that the father have the physical possession of the child from June 1, to July 5, 1956.

On July 23, 1956, the further hearing was held, at which time the testimony developed that the mother, for some time at least since the previous hearing, had been living with the child in an apartment in Beverly Hills with a man not her husband. She admitted to sleeping in the same bedroom with the man, but denied that there was anything improper between them, and stated that she had no idea how many nights she had stayed in the apartment of her "very good friend" since July 5, 1956. There was further testimony that when the father went to pick up the child at the hotel where the mother and child were then living, on May 31, 1956, that he was delayed and could not take the child's luggage until he paid a delinquent hotel bill for the child and the mother. During the period from June 1, 1956 to July 5, 1956, the father had the child in his home where the youngster was happy and the father grew to love the child a great deal and became quite anxious to have the permanent custody of his daughter. Arrangements were made to place the child in a good day school. The child demonstrated that she was not mentally advanced to her age level and the father had made arrangements for a special tutor to assist her. The commissioner talked with the little girl in his chambers, where the youngster stated that she loved both her father and her mother, that she liked being with her father and being in his home; however, she would like to be with her mother, and she guessed that they would have nice places in the United States as well as in Mexico.

The commissioner determined that the mother had not established a satisfactory home or place in the United States within which to care for the child and that she had been moving about from place to place with no fixed residence. It was then directed that the child be with the father while the mother returned to Mexico to settle up her affairs there, and then to return to the United States and establish a facility here where the child could be reared. The mother indicated

that she thought it was somewhat of an imposition to have her leave Mexico, come to the United States and establish a home, and find gainful employment from which she was to support and maintain herself. The court, upon the basis of the commissioner's recommendations, ordered that the custody of the child be with the father, and the cause was continued to September 10, 1956.

On October 17, 1956, the matter came on again for further hearing. At that hearing it was developed that the mother had secured a two-bedroom flat under a lease for a one-year term at a rental of $150 per month, and that on that date she was delinquent in the rent to the amount of about $450; that she was then employed at $50 per week on a job which she had had for only three days. The mother had also engaged a nurse at $100 per month, plus food and lodging, to assist her in the maintenance and care of the child.

The court then ordered that the order of July, 1956, be modified to provide that the father return the child to the mother on or before October 27, 1956, and that the father have the right to reasonable visitations and to have the physical possession of the child on the second weekend of each month and one month during the summer vacation. The whole matter was then again continued to March 11, 1957, for further hearing. The commissioner had stated that "[i]t would appear that the court should review the situation of the plaintiff and the minor child in five or six months to determine whether or not the plaintiff will carry out her intentions of making this home a permanent one." It was further developed that the petitioner herein had placed the child in a private school in La Jolla and had secured special tutoring for her and that she was able to enter the third grade. It was stated by a teacher that the child should not change schools in the middle of the term. There was also testimony that while in Mexico the child had been moved about from one place to another about 26 times, and had changed schools about 10 times, all of which had, undoubtedly, contributed to her backwardness. It was brought out further that if she were allowed to stay in the La Jolla school with her father it would be the first time in her life that she had ever completed a school term in one place.

The last above-mentioned order was entered on October 19, 1956, and on October 26, 1956, the father perfected an appeal. Until the early part of November, 1956, the attorneys for the mother were of the belief that the appeal automati-

cally stayed the order of October, 1956. However, they ultimately learned of sections 949a, Code of Civil Procedure, which was added to the statutes in 1955, and 946, and on November 9, 1956, they secured a writ of habeas corpus returnable November 19, 1956, requiring the father to produce the child for delivery to the mother. The father and his attorneys, up to that time, were of the impression that the appeal automatically stayed the order of October, 1956. A petition was then made to this court for a writ of supersedeas.

The father contends that the writ should issue because, among other things, the child is presently happily located with the father in a decent and respectable home of some stability and standing; that the child is now in school doing reasonably well; that she has made childhood friends and is presently happy and contented and healthy, and that she has the love and affection of her father and Mrs. Beatrice Saltonstall, whom the court found was well able to supervise and care for the child. Further, the father contends that the order of October 17, 1956, was detrimental to the child's welfare, her schooling, her mental, physical and moral well being, and that the court acted in an arbitrary and capricious manner; that furthermore, there are special circumstances in this case in that the court continually keeps changing the order, and then continuing the matter to a time months in the future thereby effectually preventing any successful appeal. We are in accord with the view that there should be an end to the constant changes and modifications of orders having to do with the custody of a child. (*Sorrels* v. *Sorrels,* 105 Cal.App.2d 465, 469 [234 P.2d 103]; *Bemis* v. *Bemis,* 89 Cal. App.2d 80, 90 [200 P.2d 84].)

It is true, however, that in matters of this character the burden is on the petitioner (father) to establish the necessity of the writ. (*Private Investors, Inc.* v. *Homestake Min. Co.,* 11 Cal.App.2d 488, 492 [54 P.2d 535].) The presumption is in favor of the trial court's decision, and we cannot presume error in determining the motion. (*Nuckolls* v. *Bank of California,* 7 Cal.2d 574, 578 [61 P.2d 927].) Where no probable error is shown in the petition, the appellate court will refuse to issue the writ. (*People* v. *Smith,* 71 Cal.App.2d 211, 212 [162 P.2d 475].)

We are of the opinion that the evidence which was before the trial court was not conclusive but that it was conflicting and the trial court exercised its discretion in changing the custody as it did. There is much in the petitioner's affi-

davit and petition which goes to the merits of the appeal, but, we are not concerned with what the ultimate decision should be in this proceeding. (*Food & Grocery Bureau* v. *Garfield*, 18 Cal.2d 174, 178 [114 P.2d 579].) ■ Furthermore, the petitioner in this instance requested the trial court for a stay of proceedings under the provisions of section 949a, Code of Civil Procedure, and upon a hearing being held the motion for the stay was denied. The ruling of the trial judge should not be disturbed unless it can be shown that there was an abuse of discretion.

■ As heretofore indicated, the basic fundamental matter before the court was what is the best for the child. The morals or lack of morals of either of the parents, their financial condition, the age of the child, her temperament and the love of either or both parents are all factors to be considered by the trial court in determining the best interests of the child. Necessarily, such proceedings are left to the sound discretion of the trial court and whatever it determines will not be set aside except it should clearly appear that there has been an abuse of discretion. (*Crater* v. *Crater*, 135 Cal. 633, 635 [67 P. 1049].)

Although we might well have decided the case differently had we been acting in the capacity of the trial judge, we cannot say that the court abused his discretion.

It is to be hoped, however, that before long there will be some order which will have some degree of permanency to the end that the child will be reared in, and have the benefits of a home grounded upon decency, respectability, stability, sound character and love, to the end that she may grow into and become a decent and respectable woman.

Counsel have devoted considerable time and effort in calling our attention to the effect of section 949a, Code of Civil Procedure, added to the statutes in 1955, and the amendment to section 946, Code of Civil Procedure, in 1955. No useful purpose could be served here by our discussing the sections mentioned, excepting to say that an explanation of the necessity of the history of such legislation can be found in 29 Southern California Law Review 113; 29 State Bar Journal 225 (1954), under the title "Proposals for Legislation," and the "Third Progress Report to the Legislature by the Senate Interim Judiciary Committee," March, 1955, page 34; Family Law for California Lawyers, page 778; 44 Cal.L.Rev. 141. Suffice it to say that the changes in the law in 1955 expressly recognized the appellate courts' power to issue an appropriate

writ or order, and in any event the court would have the power, even in the absence of any express recognition.

The writ is denied.

Doran, J., concurred.

WHITE, P. J.—I dissent.

From a reading of the factual background surrounding this litigation, as contained in the majority opinion and after a consideration of the evidentiary features reflected in the various hearings had in the trial court, I am persuaded that, having in mind the best interests and welfare of the child in question, the court below abused its discretion in not granting a stay pending determination of the correctness of its order. The discretion with which the trial court is clothed is not plenary nor is it an arbitrary one. It must be exercised along legal lines and, in a legal sense, discretion is abused whenever, in its exercise, a court exceeds the bounds of reason—all the circumstances before it being considered. In the early case of *Lybecker* v. *Murray*, 58 Cal. 186, the court said, at page 189:

". . . Under no circumstances is the discretion of the Court to be exercised arbitrarily, but it is a discretion, governed by legal rules, to do justice according to law or to the analogies of the law, as near as may be. . . . It must be exercised within the limitations above stated to promote substantial justice in the case."

That the court below was not satisfied with the wisdom or justice of its order from which the appeal herein was taken is evidenced by the fact that the order in question provided that "the whole matter" was continued to March 11, 1957, for further hearing, the court commissioner having stated that "it would appear that the court should review the situation of the plaintiff and the minor child in five or six months to determine whether or not the plaintiff will carry out her intentions of making this home a permanent one."

It is my reasoned opinion that the further and continued judicial "bouncing around" like a rubber ball of the child here involved should cease.

I would issue the writ of supersedeas.

A petition for a rehearing was denied February 20, 1957. White, P. J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied March 27, 1957.