137 Cal.App.2d 106 (1955)
MARION E. DeBOYNTON, Appellant,
v.
CURTIS SHERMAN DeBOYNTON, Respondent.
Civ. No. 20617. 
California Court of Appeals. Second Dist., Div. Two. 
Nov. 18, 1955.
 Robertson, Harney, Drummond & Dorsey and Brinton N. Bowles for Appellant.
 Iverson & Hogoboom and William P. Hogoboom for Respondent.
 MOORE, P. J.
 The question for decision is whether the trial court abused its discretion in modifying the interlocutory decree of divorce by so interpreting its provisions with respect to custody as to confirm the father's right to visit with his child beyond the limitations imposed upon him by the mother.
 By such decree, entered August 8, 1952, "the custody of the minor child of the parties, Elizabeth Joan DeBoynton, be and the same is hereby awarded to plaintiff, subject to the right of reasonable visitation by defendant." Dissatisfied *108 with the conduct of appellant in refusing "to allow defendant to take the minor child ... outside the residence occupied by plaintiff" and because she has "at all times denied defendant his right of reasonable visitation," by petition, filed October 6, 1953, respondent caused appellant to be ordered to show cause why she had refused to permit the child to visit with respondent outside the presence of appellant. Pursuant thereto, a series of hearings was held by the trial court. On October 27, 1953, the matter was referred to Commissioner Brock for "findings and recommendation" and an investigator was appointed, "his report to be received in evidence, subject to the right of both parties to offer additional evidence." Pending further hearing, without prejudice, defendant was allowed to take the minor child away for Christmas Eve night, to be returned at 10:30 a. m. on Christmas day. Three other hearings were held on January 26, May 26, and June 15, 1954. A final order was entered on June 21, 1954, whereby "the defendant shall have rights of reasonable visitation with the minor child and the defendant shall have physical custody of said child on alternate weekends" from 6 p. m. Friday to 7:30 p. m. on Sunday and "shall have physical custody of said minor child on alternate Christmas holidays from December 20 to December 26 of alternate years."
 Despite the fact that respondent at no time sought any substantial change in the original provision for custody, at the hearing on January 26, 1954, appellant for the first time accused respondent of degenerate acts toward his 30-month-old daughter. Basing her accusation upon what she declared to have been the statement of the infant, appellant made her charges first to the court's investigator and later to the court. By reason of such asserted behavior, appellant demands that the father's visits with the child should be wholly forbidden or be allowed only under strict supervision. After hearing the complaint of appellant, the investigator interviewed Dr. Simms, a child psychologist whom appellant had consulted with the result that Dr. Simms, after two hourly visits with the child "found nothing to indicate evidences of degenerate behavior by the father." The investigator's report contains the statement that "the home in which he would lodge the child on weekends is of adequate size and comfortably furnished and proper care and supervision is available." He recommended action substantially as that embraced within the court's final order. *109
 Notwithstanding the denials of respondent, the testimony of his wife, and the opinions of the investigator, appellant insists that the testimony of Dr. Lobb, a psychiatrist, should have been the court's guidance. From the tests made by the witness, she derived the opinion that "this child shows evidence of having been psychologically disturbed and profoundly disturbed by some exposure to male sexuality ... subjected to precocious sexual stimulation." While from such tests the psychiatrist opined that the infant had been molested by the father, yet the witness concludes that "the best program for the child would be a situation in which we do not have an abrupt breaking off with this man. ... But if she saw him only in the presence of a responsible person, not so identified with him as to be unreliable, but a responsible person, either an impartial female, or the mother or someone of that type, then I think for the best interests of the child that visitation should be allowed."
 The court was not overwhelmed by the suspicions of the mother or the theory and tests of her psychiatrist. It adopted the testimony that was contradictory to that of Dr. Lobb, including the report of Dr. Simms who was not brought into court. Mrs. Barbara DeBoynton, present wife of respondent, testified that she always accompanied respondent when he brought his daughter to their home; she was never alone with her father; he was never undressed in the child's presence; she, alone, accompanied the infant to the bathroom; "at all times" in our home "there has always been someone with her other than the father"; she plays with other children of about her own age; she appears to love her father very much and tells him so about every 20 minutes; has her nap from 2 to 4 p. m.; she never displayed interest in or knowledge of her genitals in the presence of women or men. Mrs. DeBoynton considers the daughter a lovely child, "very intelligent and well mannered." Respondent denied the charges of appellant and the implication of Dr. Lobb. He testified that the child had long been subject to chafing and diaper rash; that she had complained about it to her mother who applied a remedy. Numerous neighbors testified to the happy relations between father and daughter and of his kindness to and care for her.
 After all the evidence had been introduced, the commissioner received the investigator's report by stipulation, interviewed the child alone and then made his recommendations to the court. [1] After appellant's objections and exceptions *110 to the commissioner's findings and conclusions had been duly considered, the order of June 21, 1954, was entered. It was not based solely upon the investigator's report, but since that document was in evidence, its contents were properly considered. (Exley v. Exley, 101 Cal.App.2d 831, 836 [226 P.2d 662].)
 The motion of respondent was not for a modification of the interlocutory decree. Neither does the order appealed from modify the judgment. Respondent's petition merely sought the aid of the court to effect definite terms for the enforcement of his rights under the decree. The order defines in concrete terms the extent of the father's right to visit with his child and requires appellant's compliance. (Gury v. Gury, 219 Cal. 506, 507 [27 P.2d 758].) [2] Respondent had the right to visit reasonably with his child at, and away from the mother's residence. Such right ensues from parenthood and should not be denied without cause. (Exley v. Exley, supra, p. 839.)
 Appellant contends that the custody provisions of the decree should not have been modified without first showing the child would gain a substantial benefit. As above observed, his visitations rights were not substantially modified, but were merely interpreted. Smith v. Smith, 126 Cal.App.2d 65 [271 P.2d 178], does not support appellant. That decision merely reports the attempt of a father to effect an actual change of custody in order that he might remove his child's residence to Arkansas. To grant his request would have deprived California courts of custodial control.
 [3] Appellant contends that before making a change in the provision for custody, it was incumbent upon the court first to determine that there had been a change in conditions that would affect the child. The "change of circumstance rule" is not ironclad. A situation may arise in which the welfare of the child might require a change of the former order as to custody. (Foster v. Foster, 8 Cal.2d 719, 728 [68 P.2d 719].) [4] The paramount concern in awarding custody as between parents is the welfare of the child who is not property, but is a person with rights. (Juri v. Juri, 69 Cal.App.2d 773, 779 [160 P.2d 73].)
 [5a] Appellant complains that the trial court abused its discretion in failing to require custody by the father to be supervised. She quotes the testimony of Dr. Lobb as the basis for her contention. In the first place, the court was not obliged to and did not adopt that doctor's conclusions. *111 Evidently they were not based upon all the known facts. In the second place, other testimony was received which, in the reasoning and opinion of the trial judge, was of more persuasive force than that of the learned doctor. [6] The opinion of an expert is not of such quality as to compel its acceptance by the trier of fact. (Rose v. State, 19 Cal.2d 713, 733 [123 P.2d 505].) Its purpose is merely to add to the light projected by the other proof. (Ibid) [7] Where there is a conflict in the evidence, the finding of the trial court is final. [5b] Nothing in the record indicates an abuse of discretion in making the order. The evidence already reviewed is sufficient to warrant the implied finding of the father's fitness to have his daughter's physical custody and to justify the order defining with exactness the extent of his visitation rights. He has a comfortable home, a refined wife who has a high regard for the child and supervises her diet, her activities and her rest in a bedroom of her own. Not a hostile witness was produced from among the friends who visited respondent while his baby was there.
 Order affirmed.
 McComb, J., and Fox, J., concurred.