[Civ. No. 25629.   Second Dist., Div. Three.   Aug. 7, 1961.]

JOEL MICHAEL MILNE, Respondent, v. GERALDINE MILNE GOLDSTEIN, Appellant.

Hahn, Ross and Saunders and E. Lloyd Saunders for Appellant.

Bernard B. Cohen for Respondent.

SPARKS, J. pro tem.*—Defendant Geraldine M. Goldstein has appealed from a judgment and order of the court compelling her to send her two minor daughters for a six-week visit with their father Joel Michael Milne in South Africa.

---

* *Assigned by Chairman of Judicial Council.

She seeks a writ of supersedeas to hold in abeyance the operation of the judgment until the appeal therefrom can be heard and determined.

Antecedent data before us shows that the Milnes were married in New York City in the year 1947; that they thereafter removed to Johannesburg, Union of South Africa, where the two children were born, Linda on July 28, 1948, and Candice on October 18, 1950. In 1953 defendant and the two children left the Union of South Africa on the pretext of a visit and came to the United States. Thereafter defendant refused to return with the children to South Africa. On September 9, 1954, the defendant obtained a final decree of divorce from plaintiff in the State of Nevada, whereby the custody of the children, then being physically in the State of Nevada, was awarded to defendant with right of reasonable visitation by plaintiff. Since the latter part of 1954, defendant and the two children have lived continuously in California at Los Angeles. Defendant has remarried. On November 11, 1954, plaintiff also obtained a final decree of divorce in an action which he had filed in South Africa, and whereby the custody of the children was awarded to him. During the ensuing years plaintiff made a trip annually, with one exception, from Johannesburg to Los Angeles in order to visit with his daughters. His average stay was about six weeks, during which time he visited extensively with them, taking them on trips in California, and having them with him overnight and on week ends. During his visit in 1960, plaintiff endeavored to obtain defendant's consent that the girls be permitted to visit with him in South Africa for six weeks in the summer of 1961. Upon defendant's refusal to grant permission, plaintiff then filed an action in the Superior Court of Los Angeles County, wherein he sought an order granting him the physical possession of the children for six weeks in the summer vacation in order that they might visit with him at Johannesburg and offered to post a bond in the court guaranteeing their return. Defendant filed an answer and a cross-complaint, requesting that plaintiff be restrained from removing the children from the county of Los Angeles, that she be awarded child support and attorney's fees, and that the decree of divorce awarded her in the State of Nevada be declared valid in California.

Several hearings were had preliminarily on an order to show cause, at which both plaintiff and defendant testified. Thereafter an order was granted to plaintiff authorizing, upon certain conditions, the visitation privileges requested. On March

28, 1961, the parties went to trial on the issues as joined by their pleadings and as defined in the pretrial conference order. The trial lasted eight days and was presided over by a different judge than the one who had heard and granted the interim order. Plaintiff was not present at the trial and, in lieu thereof, his testimony as given at the hearing on the order to show cause was read into the record. At the conclusion of the trial a written memorandum of decision was filed and thereafter findings and judgment signed by the trial judge. The conclusion reached by both judges was substantially the same, namely: that the girls should, under certain conditions set forth in the findings and judgment, be sent to South Africa to visit with plaintiff for approximately six weeks of each year. From this judgment defendant has appealed, and a motion to stay during appeal having been denied, petition is made to this court for writ of supersedeas.

██ The issuance of a writ of supersedeas is a matter of discretion to be exercised by the court whenever it appears necessary and proper to preserve appellate jurisdiction. (*Rosenfeld* v. *Miller,* 216 Cal. 560 [15 P.2d 161]; *Kim* v. *Chinn,* 20 Cal.2d 12 [123 P.2d 438]; *Martin* v. *Rosen,* 2 Cal.App.2d 450 [38 P.2d 855].) Were it not so, the enforcement of a judgment not automatically stayed would deprive an appellant of the fruits of a successful appeal. ██ Being discretionary, the writ will not be granted to maintain a status quo of the litigation unless the appeal presents substantial questions for decision (*Private Investors* v. *Homestead Min. Co.,* 11 Cal.App.2d 488 [54 P.2d 535]; *Erickson* v. *Bohne,* 120 Cal. App.2d 606 [261 P.2d 782]), and unless there is a probability that error has been committed. (*Sanchez* v. *Sanchez,* 178 Cal. App.2d 810 [3 Cal.Rptr. 501]; *Olsen* v. *Board of Supervisors,* 30 Cal.App.2d 635 [87 P.2d 36].)

Without prejudging the various claims of error advanced in the instant case, the principal question of substance is whether the trial court exceeded its admittedly broad discretion in visitation matters.

Defendant contends that if the two girls are permitted to leave the jurisdiction of the court and go to South Africa, she will never get them back, and her custody rights will be irrevocably destroyed. In addition, she alleges that due to domestic conditions in Transvaal, it would be unsafe for her daughters to spend six weeks there; that she should not be ordered affirmatively to place or cause the children to be placed aboard an airplane in Los Angeles for the trip to South

Africa, nor be compelled to obtain passports, visas and other papers, and make other necessary arrangements for the flight.

In reply, plaintiff urges that the two judges who passed upon the matter found adversely to these contentions and were convinced that plaintiff will do everything within his power to return or cause said children to be returned to Los Angeles, and that there was no evidence which indicated that they will be in danger or exposed to harm while in South Africa. In addition, plaintiff points to certain safeguards which he voluntarily offered to provide in order to show his good faith and to guarantee the return of the girls, the provisions for which were incorporated in the judgment and which have already been accomplished, to wit: plaintiff obtained a variance in the Supreme Court of Transvaal Province, transferring the custody of Linda and Candice to defendant, with an order that plaintiff return them to the United States after their visitation; plaintiff filed with the United States Consulate at Johannesburg, an irrevocable consent to the children leaving South Africa at the end of the visitation period; plaintiff executed an agreement to place 50,000 shares of Harmony Gold Mining Company stock, valued at $175,000, in escrow in a bank in Johannesburg with instructions that they forfeit to defendant if he failed to return the girls; plaintiff also agreed to furnish defendant a plane ticket from Los Angeles to Johannesburg and return, together with advancement for all of her expenses, to be used by her in the event of failure to return the girls.

Defendant answers that these alleged safeguards would be meaningless since custodial change obtained so readily by plaintiff in the court at Johannesburg, could as readily be modified again; that insofar as the deposit of the shares of gold mining stock is concerned, plaintiff could urge coercion in the execution of the escrow agreement, and that in any event it is against the laws of the Union of South Africa to permit the withdrawal of capital assets from the country and that plaintiff is concerned about retaining the custody of her daughters and not in obtaining monetary assets in South Africa. The enumeration alone of these rival contentions discloses the difficulties with which the problem is fraught.

A parent who has been awarded either sole or joint custody and right of physical possession of children may, under certain circumstances, remove them from the state. (Civ. Code, § 213; *Shea* v. *Shea*, 100 Cal.App.2d 60, 63 [223 P.2d 32]; *Gantner* v. *Gantner*, 39 Cal.2d 272, 280 [246 P.2d

923].) ██ The permissive circumstances are usually a showing that the best interests of the children would be promoted by their removal (*Gantner* v. *Gantner, supra*), and the absence of specific prohibition against removal in the custody order. (*In re Bauman,* 82 Cal.App.2d 359 [186 P.2d 154]; *In re Dehning,* 135 Cal.App.2d 635 [287 P.2d 782]; *In re Memmi,* 80 Cal.App.2d 295 [181 P.2d 885].) ██ The fact that the resident parent may be deprived of visitation rights is generally not alone sufficient to justify restraint on the other parent's free movement unless the latter is inconsistent with the welfare of the child. (*Dozier* v. *Dozier,* 167 Cal. App.2d 714, 719 [334 P.2d 957].) ██ But if the specific motive is the frustration of the other parent's visitation rights and is unrelated to the child's welfare, permission to remove will be denied. (*Rosin* v. *Superior Court,* 181 Cal.App.2d 486 [5 Cal.Rptr. 421].)

The problem of removal of the children from the state and to a foreign country for visitation purposes, however, by a parent *who has no other custodial rights,* requires special appraisal; once the parent and child are outside of the jurisdiction of the court they are for all practical purposes beyond the reach of its decrees, and the foreign court, on the basis of a change of circumstances, could impose other custodial orders. (*Ward* v. *Ward,* 150 Cal.App.2d 438 [309 P.2d 965]; *Lerner* v. *Superior Court,* 38 Cal.2d 676 [242 P.2d 321]; *Gantner* v. *Gantner,* 38 Cal.2d 691 [242 P.2d 329].)

The Supreme Court, in *Lerner* v. *Superior Court, supra,* said in this connection: ''Although it may be assumed that the California decree would receive the same respect in other states that foreign custody decrees receive in our courts . . . , the physical presence of the child would give the foreign state jurisdiction to decide for itself what action would be in his best interests. . . . Custody decrees are universally subject to modification upon a showing of facts that require a change in the order to protect what the foreign court considers the welfare of the child. Even if the foreign forum eventually follows the California decision, protracted litigation is meanwhile inevitable. [Citing instances of protracted litigation caused thereby.] . . . We do not mean to imply that the foregoing decisions were incorrectly decided. They are cited only to demonstrate that Betty cannot be adequately protected during her appeal if the trial court may enter orders allowing her child to be taken from the state.'' (Pp. 681-683.)

Immediately following *Lerner,* in the same volume, come the two cases of *Gantner* v. *Superior Court,* 38 Cal.2d 688 [242 P.2d 328] and *Gantner* v. *Gantner, supra,* 38 Cal.2d 691, involving the right of a wife to take the children to Australia for a summer vacation trip pending an appeal from an order and judgment modifying a divorce decree prohibiting the removal of the children from the State of California. The Supreme Court granted a writ of prohibition in the first case, prohibiting the trial court from entering the order permitting the removal of the children on the ground of lack of jurisdiction, under section 946, Code of Civil Procedure,[1] but in the second case, a direct petition for removal was denied, the court saying: ''Without a showing that serious evils threaten the welfare of the children, the status quo at the time the appeal was taken will not be disturbed.'' (Pp. 692-693.)

Subsequently the Legislature amended said section 946 and added 949a, Code of Civil Procedure, eliminating the automatic stay on appeal of custodial orders and giving the trial court discretionary power to stay execution.[2] Since the enactment of this legislation and the vesting in the trial judge of discretionary authority to regulate the custody of children during review, it has been held that appellate courts will seldom interfere by issuing a writ of supersedeas. (*Faulkner* v. *Faulkner,* 148 Cal.App.2d 102, 105 [306 P.2d 585]; *Saltonstall* v. *Saltonstall,* 148 Cal.App.2d 109 [306 P.2d 492]; *Rude* v. *Rude,* 148 Cal.App.2d 793 [307 P.2d 679].) Notwithstanding the logic of these decisions, a distinction may

---

[1] (Code Civ. Proc., § 946, prior to amendment.) ''Whenever an appeal is perfected, as provided in the preceding sections of this chapter, it stays all further proceedings in the court below upon the judgment or order appealed from, or upon the matters embraced therein, . . .''

[2] (Code Civ. Proc., § 949a.) ''An appeal does not stay proceedings as to those provisions of an order or judgment which award, change or otherwise affect the custody, including the right of visitation, of a minor child in any civil action, action filed under the Juvenile Court Law, or special proceeding nor the provisions of an order or judgment for the temporary exclusion of a party from a family dwelling or the dwelling of the other, as provided in Section 157 of the Civil Code; provided, the trial court may, in its discretion, stay execution of such provisions pending review on appeal or for such other period or periods as to it may appear appropriate; provided further, that in the absence of a writ or order of an appellate court providing otherwise, the provisions of such an order or judgment allowing, or eliminating restrictions against, removal of the minor child from the State are stayed by operation of law for a period of 30 days from entry of the order or judgment and are subject to any further stays ordered by the trial court, as herein provided. The appellate court shall have the power to issue a writ of supersedeas, injunction, or other appropriate writ or order in such proceedings as may be proper in aid of its jurisdiction.''

perhaps be noted for the reason that none of them was specifically concerned with the problem of the *removal* of a child presently domiciled in this state to a foreign jurisdiction solely for visitation purposes. We observe that the section itself of the Code of Civil Procedure imposes a limitation on the authority of the trial judge by requiring an automatic stay of 30 days when the order or judgment provides for a removal of the minor from the state. (Code Civ. Proc., § 949a.) Then follows the provision: "The appellate court shall have the power to issue a writ of supersedeas, injunction, or other appropriate writ or order in such proceedings as may be proper in aid of its jurisdiction." (Code Civ. Proc., § 949a.) In *Saltonstall* v. *Saltonstall, supra,* 148 Cal.App.2d 109, 115-116, the court stated: "Suffice it to say that the changes in the law in 1955 expressly recognized the appellate courts' power to issue an appropriate writ or order, and in any event the court would have the power, even in the absence of any express recognition." And in the recent case of *Sanchez* v. *Sanchez,* 178 Cal.App.2d 810 [3 Cal.Rptr. 501], the court in issuing a writ of supersedeas to stay execution of a change of custody pending determination of the issue on appeal, quoted the language set forth above in the second *Gantner* case and then stated (pp. 814-815) : "The legislation of 1955 enacting section 949a, Code of Civil Procedure, did not establish a different test. While the 'Third Progress Report of the Legislature by the Senate Interim Judiciary Committee' (March, 1955) explains that the perfection of an appeal could delay execution of an order for very substantial periods and that '[a]s a result the child is subjected to a continuance of the same conditions which brought about the change order' (quoted in *Faulkner* v. *Faulkner, supra* (1957), 148 Cal.App.2d 102, 106) it suggests only that continuation of a dangerous condition should be prevented; it does not state that the test as developed in prior cases should be obliterated." The court held on page 815: "The section leaves intact the obligation of the court to ascertain the best interests of the child and accordingly determine whether the continuation of the status quo pending appeal exposes the child to serious evil or adverse effects."

In the instant case there was no contention that the continuation of the status quo would expose the children to "serious evil or adverse effects," it being conceded that the girls are being well cared for in their present environment. The dan-

gers, if any, would arise from transporting them from their present milieu to the uncertainties of South Africa.

From the foregoing, we reach the conclusion that the proposed removal of the two girls from the jurisdiction of the court presents a substantial question for review on appeal; for the obvious reason that if there should occur some miscarriage in the return of the children, the court would be utterly without power to enforce any of its orders and defendant's custodial rights would be rendered barren. To recover her children, defendant would be required to travel to South Africa and engage in litigation of unknown duration. We acknowledge that the trial court had a wide discretion in allowing visitation privileges and that it is one of the rights of parenthood to have children visit at a parent's home on proper occasions (*DeBoynton* v. *DeBoynton,* 137 Cal.App.2d 106 [289 P.2d 868]; *Exley* v. *Exley,* 101 Cal.App.2d 831 [226 P.2d 662]; *Williams* v. *Williams,* 103 Cal.App.2d 276 [229 P.2d 830]), but such discretion is not absolute and in determining whether it has been exceeded consideration will not be restricted to the desires of the parents. The welfare of the children and the effect upon them of modification of custodial orders will always remain of paramount concern.

There was no suggestion that if plaintiff elected to visit his daughters in Los Angeles, as in the past, there would be any diminution of the privilege or that he would not be afforded full visitation opportunity; nor was it suggested that plaintiff was disabled in any way from making the journey to California. There was some contention that the amount of money which he would be permitted to take out of South Africa, exclusive of the cost of his airplane passage, was not adequate for his maintenance and entertainment of Linda and Candice during the six-week period. However, it appeared that the amount allowed was the sum of $1,750, which does not appear to be unreasonably inadequate for the contemplated period.

It further appears that portions of the judgment here involved, which ordered defendant to obtain passports, visas, and make other necessary arrangements to put her daughters on the airplane, may be in the nature of mandatory injunctions. If such be the case, such affirmative acts would be automatically stayed by the appeal. (*Smith* v. *Smith,* 18 Cal. 2d 462 [116 P.2d 3]; *Luitwieler* v. *Superior Court,* 54 Cal. App. 528 [202 P. 165].)

In any event, we have concluded that the enforcement of the judgment as a whole should be stayed and the custodial

status quo of the two girls be maintained until the substantial questions presented here can be reviewed on appeal.

If the trial court's determination in this matter be upheld, plaintiff will have confirmed the right to have his daughters with him in South Africa for six weeks of *each year*. True, the privilege of having the girls come to Johannesburg this year will be lost, although he may still visit them in California. However, beginning in 1962, and continuing annually thereafter, the girls will leave for South Africa if it be held that the trial court did not abuse its discretion and the judgment is affirmed. On the contrary side, if the writ be not granted and the girls are not returned to the United States, the object of the appeal would be frustrated.

We therefore grant the writ of supersedeas.

Vallée, Acting P. J., and Ford, J., concurred.