.[S. F. No. 21085. In Bank. Sept. 27, 1962.]

Adoption of ROBERT ALLEN COX, a Minor. ROY G. COX et al., Plaintiffs and Respondents, v. FRANK E. MEREDITH et al., Defendants and Appellants.

Nancy Nye and Grance M. Wallis for Defendants and Appellants.

Fred T. Jenner for Plaintiffs and Respondents.

WHITE, J.—Frank E. and Dorothy M. Meredith seek a writ of supersedeas to stay the execution of an order which requires that they relinquish custody of Robert Allen Cox to his purported natural parents, Roy G. and Virgie Lee Cox, pending the Merediths' appeal from that order which also

granted the Coxes' petition to withdraw their consent to the adoption of the minor by the Merediths.

When only a few days old Robert Allen Cox was placed in the home of the Merediths directly from the hospital where he was born to Virgie Lee Cox on December 13, 1960. His birth certificate states that his mother is Virgie Lee Bohannon and his father Roy Ray Bohannon. At the hospital he was known as the Bohannon Baby. Following his discharge from the hospital he was continually in the custody of the Merediths for more than 18 months until the court order from which relief is here sought.

The Merediths have filed a petition for the adoption of the minor and in May 1961 the Coxes executed their written consent thereto. The State Department of Social Welfare has made investigations of the parties and the reports thereof are made a part of the record. It appears therefrom that the Coxes have had a stormy marital career; that they have three other children; that these children have been poorly maintained and cared for and have not been adequately clothed and fed; that Mrs. Cox's home was often dirty and unkept, as were the children; that both Coxes drank to excess; that both were sexually promiscuous during the course of the marriage; that there is doubt as to who is the father of the minor child herein; that Mr. Cox had been surgically sterilized at a time prior to the conception of the minor; that Mrs. Cox made statements to different persons at different times to the effect that the father of the minor is a soldier whom she had met in a bar and with whom she had stayed for several days; that Mr. Cox had a quick and violent temper often physically abusing Mrs. Cox and the children; that he has a minor criminal record and was on probation at the time of the report, and that both he and Mrs. Cox used profanity in the presence of others and their children. Almost all of those persons in the neighborhood in which the Coxes resided and who were interviewed refused to make recommendations of custody favorable to the Coxes. Typical of the impressions is the investigator's conclusion as follows: ''There is strong evidence of marital discord, abuse and separation, and reports indicate inadequate care and supervision of the children.''

The reports further show that the Merediths maintained a clean and orderly home; that they had three teenage boys who resided with them; that all members of the family fully accepted the minor and manifested their love and affection for him; that during the more than 18 months while he was

with the Merediths a good home and family life had been provided for him; that he was a strong, healthy and well-adjusted boy, and that during this period the Coxes had shown little or no interest in him. It further appeared that Mrs. Meredith had experienced a serious alcohol problem some five years ago, but that she had overcome this difficulty and had not used alcohol for four years last past. Typical of the investigator's conclusions in his reports is the following remark: "The baby is large for his age, strong, radiantly healthy and expresses his happiness with his environment by continuous, joyful activity. The patience and tolerance with which Mr. and Mrs. Meredith accept the activities of the baby is indicative of their deep and sincere love for the baby. This Investigator could find no reason for adverse criticism of the home environment which Michael the minor herein enjoys with the Meredith family." It is alleged in the respondents' return to the order to show cause that the State Department of Social Welfare had recommended against the adoption by the Merediths, but such recommendation does not appear as a matter of record, and the petition for adoption had not come on for hearing prior to the action on the instant petition for withdrawal of consent.

In February 1962 the respondents filed the aforementioned petition for withdrawal of consent. It was alleged therein that they had given their consent to the adoption only because Mr. Cox did not believe he was the father of the child; that he insisted that Mrs. Cox agree to the adoption and she did so only because of his insistence; that respondents thereafter came "to realize and know that Roy G. Cox is, in fact, the natural father of the child, and had that fact been known prior to the giving of the Consent to Adoption, said consent would not have been given;" that the respondents were the "loving and dutiful" parents of the minor brothers and sisters, and that it would be to the best interests and welfare of the minor to be returned to his natural parents, brothers and sisters. In a report submitted by the State Department of Social Welfare on the question of the withdrawal of consent after filing the petition therefor (Civ. Code, § 226a), it appears that the Coxes were then living in a three-room apartment without their other children, who had gone to stay with Mr. Cox's married sister in Wichita, Kansas. Both the Coxes were working, as had generally been the case for the past few years. It was stated in the report that they "plan to make a home for their children but are undecided as to whether they will remain in this area or return to Kansas." No recommendation was made.

It is alleged in the present petition for supersedeas, and disputed in the return thereto only in the manner hereafter appearing, that "respondents testified that the allegations in their verified petition for withdrawal of consent, setting forth the reason for withdrawal, were false and untrue and knowing they were untrue, they signed the verification. No other reason was shown. No suitable plan was shown for the child's future welfare." It is further alleged without dispute that both respondents testified under oath at the hearing that Roy G. Cox was not the natural father of the minor. Virgie Lee Cox testified further that the appellants had provided a good home for the child. She conceded that her other three children were in Kansas; that both she and her husband were employed, and that if she obtained custody of the minor she would continue to be employed and would take the child each day to a baby sitter. It is also alleged without dispute that immediately prior to her court appearance Mrs. Cox appeared at the Merediths' home and stated that she and her husband had quarreled, and that she no longer wanted the child. In the presence of Mrs. Meredith she called and advised her attorney that she would not appear in court and that she wished to relinquish her claim on the child. Mrs. Cox confirmed at the hearing that such events had taken place.

Respondents apparently sought in the trial court, and in the present proceedings, to justify the seemingly inconsistent positions taken from time to time concerning the minor's parentage by the following explanation appearing in the return to the order to show cause: "Appellants in their petition for hearing by this Court several times refer to Respondents' Petition to Withdraw Consent to Adoption being based upon admitted perjury. This was specifically referred to at the trial level, and both Respondents testified their intended meaning, and their understanding, was that Respondent Roy G. Cox was not willing to believe that he was the father of said minor and raise said minor as his child although he knew, because of surgical sterility, he could not be the natural father of said minor. The Petition was filed in its present form because of a misunderstanding in the meaning and difference between the willing to believe he was the father, and actually believing he was the father. The trial court heard the explanatory testimony by Mr. and Mrs. Cox, and apparently was satisfied that there was, in fact, a misunderstanding rather than intended perjury on the part of Respondents." As justification for the home life into which the minor would be interjected,

the return states: "[Appellants] also state in their Petition that there was no suitable plan shown for the child in restoring custody to Respondents. Respondent Virgie Lee Cox testified that her three children, with their mother and father until recently, had been sent back to the State of Kansas for a visit with relatives; further, that it was anticipated in the near future that the children would be returned to their parents. For the time being, the Coxes were living in a one-bedroom apartment, but were looking for larger quarters to accommodate the entire family. Mrs. Cox further testified that she was a working mother, and because of this, she would necessarily have to leave the youngster with a baby sitter while at work during the day. This situation exists in literally millions of American homes today wherein it is economically necessary or advantageous that the mother work. Certainly the situation of the working mother cannot be considered unreasonable or unsuitable for the rearing of children. Again, the trial court apparently felt that such a plan was satisfactory, and there is no showing of abuse of discretion in so finding." Mr. Cox has been steadily employed and earns in excess of $3.00 per hour.

Based on the foregoing record the trial court granted the motion for the withdrawal of consent and ordered the minor to be released to the custody of the Coxes. By their petition for the writ of supersedeas the Merediths seek to stay that portion of the order which requires that they surrender interim custody.

Withdrawal of consent herein was sought pursuant to section 226a of the Civil Code, which provides in part as follows: "Once given, consent of the natural parents to the adoption of the child by the person or persons to whose adoption of the child the consent was given, may not be withdrawn except with court approval. . . . The State Department of Social Welfare or the licensed county adoption agency shall, prior to the hearing of the motion or petition for withdrawal, file a full report with the court and shall appear at the hearing to represent the interests of the child. . . . If the court finds that withdrawal of the consent to adoption is reasonable in view of all the circumstances, and that withdrawal of the consent will be for the best interests of the child, the court shall approve the withdrawal of the consent; otherwise the court shall withhold its approval. If the court approves the withdrawal of consent, the adoption proceeding shall be dismissed. . . ."

The propriety of the withdrawal is not technically before us at this time, and presumably will be determined on the appeal now pending. It is claimed, however, that it was an abuse of discretion to order the interim change of custody in the instant circumstances. Section 226b of the Civil Code provides: "In any adoption proceeding in which the parent has refused to give the required consent or in which the reason or cause for the withdrawal of the petition or dismissal of the proceeding is the withdrawal of the consent of the natural parent or parents, the court shall order at the hearing the child restored to the care and custody of the natural parent." It is claimed by respondents that the trial court was thus directed to restore custody to the natural parents. But the provision, by its own terms, is operative only where the natural parents gave no consent or the petition for adoption has been withdrawn or dismissed. Accordingly, a short answer to the instant contention might well be that section 226b is not applicable because none of the circumstances which make it operative exist, although the court might have dismissed as provided in section 226a. However, in the instant case an appeal has been interposed and the fundamental answer would appear to rest in the rules governing the stay of orders on appeal therefrom.

Section 949a of the Code of Civil Procedure provides in pertinent part: "An appeal does not stay proceedings as to those provisions of an order or judgment which award, change or otherwise affect the custody, including the right of visitation, of a minor child in any civil action . . . ; provided, the trial court may, in its discretion, stay execution of such provisions pending review on appeal or for such other period or periods as to it may appear appropriate. . . . The appellate court shall have the power to issue a writ of supersedeas, injunction, or other appropriate writ or order in such proceedings as may be proper in aid of its jurisdiction." This section has been held not to require an automatic effectuation of an order of custody where there is an appeal. (*Sanchez* v. *Sanchez,* 178 Cal.App.2d 810 [3 Cal.Rptr. 501].) In the case just cited when the cause was before the District Court of Appeal solely on an application for a writ of supersedeas,[1] it was held that

---

[1]When the appeal on the merits was decided by the District Court of Appeal (*Sanchez* v. *Sanchez* (Cal.App.) 7 Cal.Rptr. 404) a hearing was granted by this court and the judgment of the trial court affirmed (*Sanchez* v. *Sanchez* (1961) 55 Cal.2d 118 [10 Cal.Rptr. 261, 358 P.2d 533]).

supersedeas will lie where the court committed probable error in the award of interim custody and there was no showing that continuation of the status quo would expose the child to adverse effects. The court stated at page 815: "Indeed, if this legislation did enact an automatic effectuation of an order changing custody despite appeal, it would compel the evil which the Legislature sought to correct."

Prior to the enactment of section 949a in 1955 (Stats. 1955, ch. 170, § 1; amended, Stats. 1957, ch. 2145, § 2) the rule was that an appeal did stay the judgment of custody, and "the trial court could not order the transfer of the child from the appealing parent to the proper one, even though the child's retention by such appealing parent threatened imminent danger to the child. 'In many cases there was serious need for an immediate change in the custody of a minor, but because of the above rule a change was delayed for substantial periods. To alleviate some of the problems in this area, the Legislature enacted section 949a of the Code of Civil Procedure.' (29 So.Cal.L.Rev. (1955), pp. 113-114.)" (*Sanchez* v. *Sanchez, supra,* 178 Cal.App.2d 810, 812.) Thus, the very evil which section 949a sought to prevent was the situation wherein the trial court was not at that time authorized to act in the best interest of the child pending the interim period during which an appeal was being prosecuted from an order changing custody. Manifestly the Legislature did not intend to prevent in every case the issuance of a stay from an order changing custody when it provided that a stay was not to follow an appeal as a matter of course. "The section leaves intact the obligation of the court to ascertain the best interests of the child and accordingly determine whether the continuation of the status quo pending appeal exposes the child to serious evil or adverse effects." (*Sanchez* v. *Sanchez, supra,* 178 Cal. App.2d 810, 815; see also *Milne* v. *Goldstein,* 194 Cal.App.2d 552, 559 [15 Cal.Rptr. 243].) The court in the *Sanchez* case further held at page 814 that the question was not whether a change of interim custody would be harmful to the child, but "whether *the continuation of the existing custody is in the best interest of the child."* And in *Gantner* v. *Gantner,* 38 Cal.2d 691 [242 P.2d 329], which likewise involved the status of a child during pendency of an appeal (prior to the enactment of section 949a of the Code of Civil Procedure), the court stated at pages 692 and 693: "Without a showing that serious evils threaten the welfare of the children, the status quo at the time the appeal was taken will not be dis-

turbed.'' (See also *In re Barr*, 39 Cal.2d 25, 29 [243 P.2d 787].) The enactment of section 949a did nothing to alter this basic rule in the determination of whether a stay pending appeal should issue.

In the instant case there is no contention that the continuing custody in the appellants would expose the minor to serious evil or adverse effects. In *Milne* v. *Goldstein, supra,* 194 Cal.App.2d 552, this was held sufficient to justify the issuance of a writ of supersedeas. Moreover, in the instant case, the record fails to justify any conclusion by the trial court other than that the best interests of the minor will be served only by the continuing custody in the appellants pending determination on appeal. The Merediths' home is the only home the child has ever known; the Merediths and their sons are the only family which has ever shown any interest in or affection for the child. It is undisputed that the child has responded to the love and affection given him, and has developed into a completely happy, healthy and well-cared-for member of the Meredith family. Contrast his situation to that of the Coxes' children who have been ill-kept, clothed and fed in an environment of marital discord and physical abuse, where sexual promiscuity has been practiced by both parents. The record fails to demonstrate with any degree of certainty when even these children will be returned by relatives to the custody of the Coxes. And the future for the minor herein appears even more uncertain than that of the present Cox children. The baby has been, apparently, abandoned by its natural father, at first rejected by Mr. Cox and then sought after by him for reasons which are not made clear. Even his natural mother, who seems to either want or not want the child depending on Mr. Cox' current attitude, is so uncertain in her outlook that immediately before the hearing on the petition to withdraw she expressed an intention to give the child up again. It is the Coxes' admitted intention that the minor will be placed in still another entirely different and unknown environment while Mrs. Cox seeks to supplement her husband's already good income. How many more times will the Coxes change their minds concerning the future of this minor? The instability concerning this and other matters which the Coxes have demonstrated manifestly casts an uncertainty concerning the child's welfare which cannot be ignored. ''The welfare of the child . . . presents a more vital problem to this court than the disposition of money or property. Since normally no counsel represents the child as such and since he

must therefore depend upon the presentation of either the father or the mother, we feel a direct obligation to protect his interests. As a consequence, in passing upon a writ of supersedeas involving child custody, pending determination upon appeal, we must scrutinize the record with the utmost care. The elements in such a case differentiate it from an application for the writ in a case which involves less crucial issues. Arbitrary action or abuse of discretion of the trial court in the interim custody case are weighed in a more delicate and sensitive scale.'' (*Sanchez* v. *Sanchez, supra,* 178 Cal.App.2d 810, 813.)

In the *Sanchez* case, above quoted, the court had occasion to quote from the dissenting opinion in *Saltonstall* v. *Saltonstall,* 148 Cal.App.2d 109 [306 P.2d 492], where it was stated at page 116, and is equally applicable in the present case: ''It is my reasoned opinion that the further and continued judicial 'bouncing around' like a rubber ball of the child here involved should cease.'' It was further stated in the dissenting opinion in that case: ''The discretion with which the trial court is clothed is not plenary nor is it an arbitrary one. It must be exercised along legal lines and, in a legal sense, discretion is abused whenever, in its exercise, a court exceeds the bounds of reason—all the circumstances before it being considered. In the early case of *Lybecker* v. *Murray,* 58 Cal. 186, the court said, at page 189: '. . . Under no circumstances is the discretion of the Court to be exercised arbitrarily, but it is a discretion, governed by legal rules, to do justice according to law or to the analogies of the law, as near as may be. . . . It must be exercised within the limitations above stated to promote substantial justice in the case.' ''

We are persuaded that, on the record presented, the best interests of the minor herein will be served by maintaining his status quo pending the appeal, and that in view of all the circumstances herein it was an abuse of discretion for the trial court to order the transfer of interim custody. There is yet another requirement for issuance of supersedeas which finds expression in the cases and has been referred to herein. It is said that it must appear probable that an error has been made in the award of custody. (See *Faulkner* v. *Faulkner,* 148 Cal. App.2d 102, 108 [306 P.2d 585].) But we are concerned here with the propriety of the award for interim custody only and not with the correctness of the order granting respondents' petition to withdraw their consent to the adoption of the minor by appellants, and probable error in the interim award is mani-

fest. We have no hesitation in concluding that, for the best interests of the minor girl herein, we should make an order staying execution of the order requiring that appellants relinquish custody of the minor child to respondents pending determination of the appeal from such order.

That portion of the order of withdrawal of consent and award of custody which requires appellants to relinquish custody of the minor to the respondents pending appeal from the order is hereby stayed, and respondents are ordered to deliver the minor child forthwith to the custody of appellants.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Tobriner, J., concurred.