[Civ. No. 13748. Third Dist. Jan. 11, 1973.]

C. V. C. et al., Petitioners, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
DEPARTMENT OF SOCIAL WELFARE OF
SACRAMENTO COUNTY et al., Real Parties in Interest.

COUNSEL

Frederick W. Stephenson for Petitioners.

Karlton, Blease & Vanderlaan, Lawrence K. Karlton and Charles C. Marson as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

John B. Heinrich, County Counsel, and J. Steven Burris, Deputy County Counsel, for Real Party in Interest.

OPINION

**FRIEDMAN, Acting P. J.**—This mandate proceeding poses novel questions as to the rights of prospective adoptive parents whose status is terminated by the placement agency's demand for the child's return—whether the due process guarantee of the Fourteenth Amendment entitles the prospective parents to pre-termination notice and hearing; whether judicial review entails a de novo decision supported by the weight of the evidence or a narrower inquiry into the agency's abuse of discretion.

In November 1971 the Sacramento County Department of Social Welfare, a licensed adoption agency, placed an 18-month-old girl with Mr. and Mrs. C (the petitioners in this action) as prospective adoptive parents. In July 1972 the department notified petitioners that the placement "is hereby cancelled." Thereafter it demanded the child's return and filed a habeas corpus petition in the Sacramento Superior Court to enforce its demand. Mr. and Mrs. C filed a mandate petition, seeking review of the agency's decision. The two actions were consolidated for hearing. After receiving evidence the superior court on October 10, 1972, entered an order finding that the county agency had not abused its discretion and directing Mr. and Mrs. C to return the child.

The Cs filed a notice of appeal. The court refused to stay enforcement of its order and the child was taken from the Cs on October 13, 1972. Mr. and Mrs. C then petitioned this court for a writ of supersedeas. We refused supersedeas (see *Superior Court* v. *Dist. Court of Appeal* (1966) 65 Cal.2d 293 [54 Cal.Rptr. 119, 419 P.2d 183]), but chose to regard the

petition as one for a writ of mandate seeking annulment of the superior court's order. In adoption cases appellate courts grant relief by mandate in order to accelerate the child's ultimate placement in a permanent and stable environment. (*San Diego County Dept. of Pub. Welfare* v. *Superior Court* (1972) 7 Cal.3d 1, 9 [101 Cal.Rptr. 541, 496 P.2d 453].) We issued an order to show cause addressed to the superior court as respondent and the county department of social welfare as real party in interest.[1] We ordered incorporation of the superior court proceedings as part of the record before us.

Several years earlier petitioners had received a male child from the same agency and had successfully completed the adoption process. They also had two natural children. Apparently the second placement was accompanied by an agreement that no adoption petition would be filed until the child had spent a year in the family. In July 1972 an anonymous telephone call resulted in the discovery that Mr. C had engaged in drinking and was attending therapy sessions at the Sacramento County Alcoholic Rehabilitation Center.[2] Several months earlier, when the adoption case worker asked if he had a drinking problem, Mr. C had replied in the negative. There was no evidence that he was habitually intoxicated or intoxicated in the children's presence. He held a responsible job which required much overtime. There was evidence to support the belief that petitioners were conscientious parents and maintained a wholesome family environment.

After receiving the information concerning Mr. C's participation in therapy at the center, the social worker in charge of the case met with her supervisor and the psychiatrist who served as the agency's mental health consultant. As a result of that conference the supervisor sent Mr. and

---

[1] On October 13, 1972, the very day on which it received the child from petitioners, the county welfare department placed the child in the hands of new prospective parents. This precipitate and unfortunate action of the county came to light only as a result of petitioners' request for pendente lite return of the child. The child's placement with new prospective parents compounded an already delicate and distressing situation, artificially creating new personal relationships and new hopes and fears. Because the new placement involved an additional family in the uncertainties of litigation, we directed service of papers upon that family. Desiring to avoid multiple changes of environment, we refrained from ordering the child's return to petitioners. (See *Adoption of Cox* (1962) 58 Cal.2d 434, 442 [24 Cal.Rptr. 864, 374 P.2d 832].) The child's new custodians have not appeared in this action.

[2] In applying for an adoptive baby, Mr. and Mrs. C had signed a document authorizing the release of otherwise confidential information. A counsellor at the center orally described Mr. C as an alcoholic. A letter from the center to the adoption agency was more guarded in its diagnosis, refraining from that description. For some reason the letter itself was not placed in evidence.

Mrs. C the letter announcing cancellation of the adoption arrangement. A meeting with the Cs took place but without any change in the agency's decision.

In the trial court the social worker testified that the adoption placement was terminated because petitioners had withheld information; that "we couldn't trust what they had said to us in the past, and we didn't feel that we would have trust or confidence in what they would tell us in the future." The adoption supervisor testified that the conference with petitioners following the letter of cancellation reinforced the decision to terminate the adoption "in that [petitioners] had withheld information and we did feel that they were operating under stress." She testified that petitioners admitted withholding information that Mr. C had been attending the alcoholic rehabilitation center.

The administrative and judicial proceedings included no investigation into Mr. C's current use—if any—of alcohol, no prognosis, no inquiry whether his job or family life had been affected. The employee of the alcoholic rehabilitation center who had orally referred to Mr. C as an "alcoholic" was not called as a witness; the hearsay evidence of his statement hung in midair, without verification or cross-examination. In adoption proceedings the child's best interest is the primary concern. (*San Diego County Dept. of Pub. Welfare* v. *Superior Court, supra,* 7 Cal.3d at p. 9.) The judicial proceeding included no inquiry into the physical and emotional health of the child. The trial court expressed the view that its function was limited to determining whether the agency had abused its discretion; that its function did not extend to a trial de novo. Findings of fact relative to the child's best interest were neither requested nor made. (See Code Civ. Proc., § 632.)

■■■ Subject to overriding constitutional limitations, the guiding authority is Civil Code section 224n.[3] Notably, the statute expresses no require-

---

[3]Civil Code section 224n provides: "The agency to which a child has been relinquished for adoption shall be responsible for the care of the child, and shall be entitled to the custody and control of the child at all times until a petition for adoption has been granted. Any placement for temporary care, or for adoption made by the agency, may be terminated at the discretion of the agency at any time prior to the granting of a petition for adoption. In the event of termination of any placement for temporary care or for adoption, the child shall be returned promptly to the physical custody of the agency.

"No petition may be filed to adopt a child relinquished to a licensed adoption agency or a child declared free from the custody and control of either or both of his parents and referred to a licensed adoption agency for adoptive placement, except by the prospective adoptive parents with whom the child has been placed for adoption by the adoption agency. After the petition for adoption has been filed, the agency may remove the child from the prospective adoptive parents only with the approval

ment for investigation, hearing or findings as the basis for the placement agency's removal of the child before a petition for adoption is filed. Nor does it provide for judicial review to guard against the possibility of arbitrary action. Troubled by this statutory hiatus, a California decision declares: "The manifest importance of an adoption to the welfare of a child, as well as the importance to the prospective parents and to the state, impel us to conclude that the administrative action of the agency in a pre-adoption placement should be subject to judicial review. Although no provision for such review is found in section 224n and relevant sections of the Civil Code, we hold that an order by an adoption agency to terminate an adoptive parent-child placement status is a reviewable administrative order within the ambit of sections 1084 and 1085 of the Code of Civil Procedure." (*Rodriguez* v. *Superior Court* (1971) 18 Cal.App.3d 510, 513 [95 Cal.Rptr. 923].)

In this case the superior court proceedings supplied judicial review of the placement agency's action. Petitioners, nevertheless, had a status entitling them to procedural due process. ██ The lack of hearing on the merits at the agency level and the narrowness of review at the judicial level did not comply with due process demands. It is necessary to explicate the review concept described in *Rodriguez, supra.*

██ The Fourteenth Amendment's guarantee of due process of law requires notice and an opportunity to be heard before an individual suffers governmental deprivation of a fundamental interest. Entitlement to procedural protections depends upon the extent to which "grievous loss" is threatened; it requires the court to weigh the individual's interest in avoiding the loss against the governmental interest in summary adjudication.[4] The opportunity for hearing must precede, not follow, the deprivation, except for extraordinary occasions where some valid governmental interest justifies summary deprivation.[5] The formalities and procedural requisites for the hearing may vary according to the quality of the governmental

---

of the court, upon motion by the agency after notice to the prospective adoptive parents, supported by an affidavit or affidavits stating the grounds on which removal is sought. If an agency refuses to consent to the adoption of a child by the person or persons with whom the agency placed the child for adoption, the superior court may nevertheless decree the adoption if it finds that the refusal to consent is not in the best interest of the child."

[4] *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 494, 92 S.Ct. 2593]; *Goldberg* v. *Kelly* (1970) 397 U.S. 254, 262-263 [25 L.Ed.2d 287, 295-296, 90 S.Ct. 1011]; cf. *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 144-146 [93 Cal.Rptr. 234, 481 P.2d 242].

[5] *Fuentes* v. *Shevin* (1972) 407 U.S. 67 [32 L.Ed.2d 556, 570, 92 S.Ct. 1983]; *Boddie* v. *Connecticut* (1971) 401 U.S. 371, 378-379 [28 L.Ed.2d 113, 119, 91 S.Ct. 780]; *Wisconsin* v. *Constantineau* (1971) 400 U.S. 433, 437 [27 L.Ed.2d 515, 519,

function, the character of the private interest and the nature of the subsequent proceedings.[6]

In determining whether a status or right is fundamental, the courts consider its effect in human terms and its importance to the individual's life situation. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 144 [93 Cal.Rptr. 234, 481 P.2d 242].) Gain of a child for adoption fulfills the prospective parents' most cherished hopes. The event marks the onset of a close and meaningful relationship. The emotional investment does not await the ultimate decree of adoption. Love and mutual dependence set in ahead of official cachets, administrative or judicial.[7] The placement initiates the " 'closest conceivable counterpart of the relationship of parent and child.' " (*Adoption of Barnett* (1960) 54 Cal.2d 370, 377 [6 Cal.Rptr. 562, 354 P.2d 18].) To characterize enforced removal of the child as a "grievous loss" is to state the obvious.

The governmental interest is weighty. The statutory system for relinquishment to the agency, for agency placement and agency approval, bespeaks a state policy to promote the child's welfare in derogation of all other values. Civil Code section 224n (fn. 3, *ante*), distinctly expresses the state's ongoing interest in terminating an agency placement whenever the child's welfare is endangered. It expresses a legislative design to give the prospective parents only provisional and tentative status until they file an adoption petition. Until then, the licensed adoption agency is entitled to custody and control "at all times"; the placement may be terminated "at any time" at the agency's discretion; upon termination the child is to be returned "promptly" to the physical custody of the agency. These firm legislative expressions were designed to elevate the placement agency's discernment of danger above the interests of the prospective parents.

---

91 S.Ct. 507]; *Goldberg* v. *Kelly, supra,* 397 U.S. at pages 259-263 [25 L.Ed.2d at pages 294-296]; *Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 276 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206].

[6]*Boddie* v. *Connecticut, supra,* 401 U.S. at page 378 [28 L.Ed.2d at page 119]; *Goldberg* v. *Kelly, supra,* 397 U.S. at pages 262, 263 [25 L.Ed.2d at pages 295-296]; *Sokol* v. *Public Utilities Commission* (1966) 65 Cal.2d 247, 254 [53 Cal.Rptr. 673, 418 P.2d 265]; *McCullough* v. *Terzian* (1970) 2 Cal.3d 647, 653-655 [87 Cal.Rptr. 195, 470 P.2d 4].

[7]"Is [biological parenthood] more natural or more important than the mutual, reciprocal and continuous relation between parent and child, which may occur in adoptive or non-adoptive families, involved in the rearing of a child from infancy to maturity with all of the impact of day-to-day care and upbringing upon character, psychology, outlook, emotional make-up, and even biology which that entails? In this sense, does not nature 'do the work of nature' and create one a child who by nature is a stranger? In fact, in this sense, does not nature do the work of nature and create one a child who by nature is not a stranger?" (TenBroek, *California's Adoption Law and Programs* (1955) 6 Hastings L.J. 261, 276.)

This policy, nevertheless, omits any safeguard against arbitrary agency action. Constitutional realities obtrude. The public interest to be weighed in the balance is not the need for terminating the placement but the need for terminating it without prior notice and hearing. (*Goldberg* v. *Kelly, supra,* 397 U.S. at pp. 262-263.) When the child's disadvantage is potential or ultimate, the public interest may with equanimity afford the time and effort consumed by due process. The second paragraph of section 224n recognizes this fact by providing for notice and hearing if the agency wishes to remove the child after a formal petition for adoption has been filed. The constitutional entitlement of the prospective parents is no less preceding the petition's filing.[8] In the absence of imminent danger to the child, the grievous loss threatening the prospective parents outweighs the state's interest in summary termination.

An imminent danger to the child's health or safety would create an exceptional situation, elevating the public interest in summary termination above the interests of the prospective parents, justifying removal first and hearing later. There was no evidence here of imminent danger to the child.

The adoption statutes do not supply a hearing at the agency level.[9] In the present case, the termination decision of the Sacramento County Department of Social Welfare was an ex parte one, reached at a conference attended only by the case worker, her adoption supervisor and their psychiatric consultant. The adoptive parents had no notice of the threat and no chance to defend against the unsworn oral statement referring to Mr. C as an "alcoholic." Expressions of loss of confidence in petitioners and of belief that they were "operating under stress" were far too nebulous and subjective to constitute a finding concerning the child's best interest. Fairly considered, the unconditional notice of cancellation implied such a finding. After the notice was sent, petitioners were given no more than an opportunity for oral importunities, fruitlessly aimed at a *fait accompli*.[10] The administrative proceeding fell far short of the elemental fairness inherent in the concept of due process.

---

[8] "We cannot assume that adoption agencies will necessarily in all cases have such wisdom and competence that they may be set apart from other custodians and given *carte blanche* in their control of relinquished children until a petition for adoption is before the court." (*Guardianship of Henwood* (1958) 49 Cal.2d 639, 644 [320 P.2d 1].)

[9] Private as well as county agencies may qualify as licensees for the purpose of placing adoptive children. (Welf. & Inst. Code, §§ 16000, 16100.)

[10] At the court hearing, the county adoption supervisor testified that the decision to terminate the placement was only tentative until confirmed at the subsequent conference with petitioners. With all deference to the good intentions of the witness, her testimony has the earmarks of an afterthought. Four days before the meeting, she

"If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented." (*Fuentes* v. *Shevin* (1972) *supra,* 407 U.S. at p. 81 [32 L.Ed.2d at p. 570].)

■ Statutory omission of a prior administrative hearing causes no violation of due process when the affected person has a right to a trial de novo in the superior court before he suffers actual loss. The availability of an independent judgment review in the superior court salvages an administrative procedure which would otherwise violate the constitutional guarantee.[11] As we interpret our sister court's decision in *Rodriguez, supra,* these considerations underlay its declaration that the adoption agency's decision to terminate the placement was reviewable under sections 1084 and 1085, Code of Civil Procedure.[12]

Sections 1084 and 1085 supply the remedy of "traditional mandamus" to correct the actions of agencies and persons exercising public functions. Traditional mandamus is contrasted with "administrative mandamus." The latter governs judicial review after an administrative order "made as the result of a proceeding in which by law a hearing is required to be given,. . . ." (Code Civ. Proc., § 1094.5, subd. (a).) In review proceedings of the latter sort, the court exercises independent judgment on the evidence where a constitutionally protected interest is at stake. (Code Civ. Proc., § 1094.5, subd. (c); *Bixby* v. *Pierno, supra,* 4 Cal.3d at p.

---

had sent petitioners a written notice unconditionally declaring cancellation of the placement. As though to give it added sanctity, the cancellation notice bore a notary public verification.

[11]*Lichter* v. *United States* (1947) 334 U.S. 742, 791-792 [92 L.Ed. 1694, 1729, 68 S.Ct. 1294]; *Bixby* v. *Pierno, supra,* 4 Cal.3d at page 148, footnotes 5 and 6; *Alta-Dena Dairy* v. *County of San Diego* (1969) 271 Cal.App.2d 66, 77 [76 Cal.Rptr. 510].

"Due process contemplates that somewhere along the line a fair trial be had—not that there be two or three fair trials." (*Hohreiter* v. *Garrison* (1947) 81 Cal.App.2d 384, 402 [184 P.2d 323].) See generally, 1 Davis (1958) Administrative Law Treatise, § 7.10.

[12]In *Adoption of Runyon* (1969) 268 Cal.App.2d 918 [74 Cal.Rptr. 514], this court rejected a constitutional attack against that provision of Civil Code section 224n which restricts agency adoptions to persons selected by the agency. A commentator suggests that the *Runyon* case demonstrates "the helplessness of the judiciary in the face of the almost unlimited power" of adoption agencies. (See Bodenheimer, *The Multiplicity of Child Custody Proceedings—Problems of California Law* (1971) 23 Stan.L.Rev. 703, 724.) The availability of due process protection to prospective parents after the placement has occurred, including availability of independent judicial review of the agency's decision to remove the child, indicates that the comment is too broad. Conceivably, the constitutional necessity for independent judicial review of post-placement terminations will encourage comprehensive pre-placement investigations.

143.) Traditional mandamus traditionally supplies a comparatively narrow scope of review, confined to an inquiry whether the administrative agency has abused its discretion and limited by the notion that "if reasonable minds may disagree" the court may not substitute its own judgment for that of the administrator. (E.g., *Manjares* v. *Newton* (1966) 64 Cal.2d 365, 370-371 [49 Cal.Rptr. 805, 411 P.2d 901].)

The scope of judicial review accorded constitutionally protected interests is shaped by constitutional and not statutory factors. The touchstone is not the difference between administrative and traditional mandamus, not the happenstance of a prior administrative hearing, but rather the nature of the interest at stake, whether it is a constitutionally protected status or some lesser interest.[13] If the former, no less than a de novo, independent judgment review is permissible (see cases cited fn. 11, *ante*). That scope of review is available for the protection of constitutionally protected interests whether the mandate proceeding rests on Code of Civil Procedure sections 1084-1085 or on section 1094.5. Reconciliation with the case lore of traditional mandamus is available by recognizing that in the disposition of a fundamental interest discretion is abused if, after independent consideration of the evidence, the court determines that the agency's decision is contrary to the weight of the evidence. (Cf. Code Civ. Proc., § 1094.5, subd. (c).)

The objective of de novo judicial review is not to supplant the adoption agency or to denigrate the expertise of trained social workers. Their decisions and their expert opinions should be received with respect.[14] Rather, the objective is to prevent arbitrary judgments; to guard against placement terminations generated by the subjective inclinations of case workers and supervisors untaught in the analysis of evidence and not doctrinated in the concept of fair hearing; to promote fairness by interposing a law-trained judge between the agency and prospective parents; to insure that the ultimate decision is firmly hinged to the only permissible criterion—the welfare of the child.

---

[13]In the evolution of California administrative law, the scope of judicial review was believed to expand or contract with the statewide or local character of the administrative agency. There is room for doubt whether that factor is still influential. Here we deal with the administrative action of a local agency affecting a fundamental or constitutionally protected interest. In defining the scope of judicial review, current case law places more dependence on the character of the interest at stake than on the agency's territorial scope. (See *Bixby* v. *Pierno, supra*, 4 Cal.3d at p. 137, fn. 2.)

[14]Realism, however, compels recognition of the following observation: "Although adoption agencies are supposed to be guided solely by what is most beneficial to the child entrusted to them, it is only natural that they develop the conviction at times that their decisions and choices concerning a child's future are superior to those of others." (Bodenheimer, *op. cit.*, 23 Stan.L.Rev. 703, 717, quoted in *San Diego County Dept. of Pub. Welfare* v. *Superior Court, supra*, 7 Cal.3d at p. 10, fn. 4.)

 Here petitioners were accorded a judicial hearing before the child was removed but the court erred to their prejudice by restricting its review. The court should have exercised its independent judgment on the evidence to determine whether the agency's decision to abrogate the placement was justified by the best interest of the child.

To guide the future proceedings, we deal with the question of evidentiary range. The hearing in the trial court reveals some inconsistency at this point. Over petitioners' objection the county was permitted to introduce documents acquired by the county after it reached its decision. Although hearsay, these documents (had the county been aware of them before making its decision) would have fortified its decision. Petitioners, on the other hand, claim to have been confined to their own testimony. They did not make an offer of proof to support their claim. Certainly the parties should be accorded coextensive areas of supporting and rebutting evidence.

Relative to the permissible range of evidence, the hearing should not be beclouded by decisional references to a "limited" trial de novo. Such references occur in the context of judicial review after a formal administrative hearing decreed by statute or regulation. (See *Bixby* v. *Pierno, supra,* 4 Cal.3d at p. 143; cf. Code Civ. Proc., § 1094.5, subds. (a), (d).) They are designed to prevent a party from making a skeleton showing at the administrative hearing to be fleshed out later in court. (*Dare* v. *Bd. of Medical Examiners* (1943) 21 Cal.2d 790, 795, 799 [136 P.2d 304].) In the present case no administrative hearing was prescribed, none occurred and no evidentiary record was created. Absent such a record, the court should receive and consider any competent evidence produced by either side. (*Dare* v. *Bd. of Medical Examiners, supra,* 21 Cal.2d at pp. 797-798.)

 One more problem remains—that of the child's interim physical custody. Our decision will nullify the writ of habeas corpus by force of which the child was taken from petitioners' home. In dealing with problems of physical custody pending the resolution of adoption litigation, the courts normally call for preservation of the status quo when it poses no threat to the child. (See Code Civ. Proc., § § 917.7, 923; *Adoption of Cox, supra,* 58 Cal.2d at p. 441.) The courts assume that the agency will not make unnecessary changes in custody. (*Superior Court* v. *Dist. Court of Appeal, supra,* 65 Cal.2d at p. 297.) These expectations were violated here. Although there was no imminent threat to the child's well-being, the court refused a stay pending appeal and the county immediately took the child from the only home it had ever known and placed it with new, would-be adoptive parents. Despite cogent reasons for correcting this unfortunate action, the

child's welfare remains as the paramount concern. Multiple changes of custody should be avoided. (*Superior Court* v. *Dist. Court of Appeal, supra.*) The forthcoming abrogation of the superior court order directing the child's return to the county agency will not compel her interim restoration to petitioners' custody.

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order granting a writ of habeas corpus in superior court action number 225982 and denying the petition for mandate in action number 226845 and to take further proceedings in said actions consistent with this opinion.

Regan, J., and Janes, J., concurred.