[No. G005489. Fourth Dist., Div. Three. Sept. 30, 1987.]

JINNY N., Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
ORANGE COUNTY SOCIAL SERVICES AGENCY, Real Party in
Interest.

COUNSEL

Christian R. Van Deusen and Randall B. Hicks for Petitioner.

No appearance for Respondent.

Adrian Kuyper, County Counsel, and Susan Strom, Deputy County Counsel, for Real Party in Interest.

## OPINION

**WALLIN, Acting P. J.**—Jinny N., the foster mother of six-year-old Teresa H., seeks a writ of mandate requiring the superior court to reinstate her agency adoption petition (Civ. Code, § 224n), which it dismissed on motion of the Orange County Social Services Agency (SSA). The SSA contends the petition was improper because the agency never placed Teresa H. with petitioner for purposes of adoption. Jinny N. counters that although she originally accepted Teresa as a foster child, the SSA later encouraged her to adopt Teresa, and by actions and words altered her status to that of a prospective adoptive parent. We agree with Jinny N. and issue the writ.

I

Teresa H. was born October 8, 1980. In August 1983 the SSA placed Teresa with Jinny N. for foster care, and there she has remained ever since. Teresa has now spent more than half her life in Jinny N.'s home.

In October 1984 the juvenile court. referred Teresa to the SSA, in its capacity as a licensed adoption agency, for adoptive placement; Teresa's biological parents' rights were in the process of being terminated. In March 1985 Jinny N. filed an independent petition to adopt Teresa (see *Cain* v. *Adoption Agency* (1976) 54 Cal.App.3d 1127, 1131-1132 [126 Cal.Rptr. 836]),[1] and in July 1985 the parental rights of Teresa's biological parents were terminated (Civ. Code, § 232). Teresa was now free for adoption.

Jinny N. received a letter from the SSA in February 1986 inviting her application to adopt Teresa under its auspices. "Our agency would like to suggest that you apply to adopt Teresa through our agency. We will then conduct the required adoptive home study. Both social workers supervising children in your home, Jean Winterfelt and Denise Young, state you are providing good care and attending to all the children's needs. . . . In addition, we recognize that Teresa has made substantial progress since her placement in your home and that she is emotionally attached to both of you."[2]

In March 1986 the county counsel, representing the SSA, wrote petitioner's attorney acknowledging receipt of an amended petition for agency

---

[1] We agree with the SSA that the independent petition was an incorrect procedural vehicle for adopting Teresa, as the biological parents had not placed the child with Jinny N. for adoption. *(Cain* v. *Adoption Agency, supra,* 54 Cal.App.3d at pp. 1131-1132.) We do not, however, find that determination to be dispositive of any other issues before us.

[2] The original petition was filed on behalf of both Jinny N. and her husband. They divorced, and she continued the adoption proceedings without him.

adoption but noting it could not join in the petition until the completion of a home study. In October 1986 the SSA wrote Jinny N.'s attorney: "[O]ur agency has recently received all the necessary documents to complete the adoptive homestudy on Jinny [N.]. The homestudy is being typed. This worker is recommending approval for Jinny [N.] to adopt Teresa [H.] . . . . [¶] At this time I would like to request you proceed with dismissing the independent petition. [¶] Our agency cannot proceed with this matter until the State Department of Social Services acknowledges the 232 Civil Code action freeing Teresa from parental control. The State Department of Social Services has informed this office that the 232 Civil Code action cannot be acknowledged until the pending independent petition is dismissed. . . ."

On December 30, 1986, the SSA wrote petitioner's attorney that she had been approved to adopt Teresa, unequivocally stating "this agency has approved Jinny [N]'s homestudy to adopt Teresa [H]." The SSA continued: "Once this agency has received the acknowledgement from Sacramento we will proceed with signing adoption placement papers. At that time, it will be necessary for an Interlocutory Decree of Adoption to be filed . . . ." The same letter importuned her to dismiss the independent adoption petition and *file an agency petition.* Jinny N. complied, had her independent petition dismissed, and filed the amended agency petition.

In March 1987 the SSA removed Teresa from Jinny N.'s home (pursuant to a petition under Welf. & Inst. Code, § 387) after the child was found to have one bruise on her buttock and several others on her legs. The bruise on the buttock was attributed to a spanking by Jinny N.'s boyfriend, with whom she has since ended her relationship. At the detention hearing an offer of proof was accepted that Teresa's treating physician believed the additional small marks were probably self-inflicted: The medication to control her epilepsy caused bruising with even slight contact. Ironically, Teresa's epilepsy had only been diagnosed because months earlier Jinny N. had brought her to the doctor due to concern over similar bruises.

At the conclusion of the detention hearing the juvenile court returned Teresa to Jinny N. Nevertheless, based on this incident the SSA filed motions to intervene in, and to dismiss, the agency adoption petition.

In June 1987 the court considered the motions to intervene and to dismiss. After taking evidence and reviewing the relevant court files, the court (1) granted the motion to intervene and (2) dismissed the petition, finding the SSA had never placed Teresa with Jinny N. for purposes of adoption. (*Adoption of Runyon* (1969) 268 Cal.App.2d 918 [74 Cal.Rptr. 514].) The court ruled that signing a formal adoptive placement agreement is prerequi-

site to becoming a prospective adoptive parent. Since the SSA had reneged before Jinny N. could sign the necessary papers, she could not proceed with an agency adoption.

## II

██ The question of whether the SSA ever placed Teresa with Jinny N. for purposes of adoption is crucial. Under Civil Code section 224n, subdivision (a),[3] if Teresa was "placed for adoption," Jinny N. was a "prospective adoptive parent" entitled to file an agency adoption petition. (Civ. Code, § 224n, subd. (a).)

A prospective adoptive parent acquires certain legal rights. For example, a noticed hearing is required if an agency wishes to remove a child after a formal petition for adoption has been filed. (Civ. Code, § 224n, subd. (a).) Further, the agency's objection cannot preclude adoption in such a case if the court finds the objection is not in the child's best interest. (*Ibid.*) These protections spring from a recognition that "Gain of a child for adoption fulfills the prospective parents' most cherished hopes. The event marks the onset of a close and meaningful relationship. The emotional investment does not await the ultimate decree of adoption. Love and mutual dependence set in ahead of official cachets, administrative or judicial." (*C. V. C.* v. *Superior Court* (1973) 29 Cal.App.3d 909, 916 [106 Cal.Rptr. 123].) ██ Indeed, prospective adoptive parents are constitutionally entitled to notice and hearing if an agency seeks to remove a child from their home even *before* a formal petition for adoption has been filed. (*Id.,* at pp. 916-917.)

---

[3] Civil Code section 224n, subdivision (a) reads as follows: "The department or licensed adoption agency to which a child has been freed for adoption by either relinquishment or termination of parental rights shall be responsible for the care of the child, and shall be entitled to the exclusive custody and control of the child until either an interlocutory decree of adoption or a final decree of adoption has been granted. Any placement for temporary care, or for adoption made by the department or a licensed adoption agency, may be terminated at its discretion at any time prior to the granting of an interlocutory decree of adoption or final decree of adoption. In the event of termination of any placement for temporary care or for adoption, the child shall be returned promptly to the physical custody of the agency.

"No petition may be filed to adopt a child relinquished to the department or licensed adoption agency or a child declared free from the custody and control of either or both of his or her parents and referred to the department or a licensed adoption agency for adoptive placement, except by the prospective adoptive parents with whom the child has been placed for adoption by the department or licensed adoption agency. After the petition for adoption has been filed, the department or licensed adoption agency may remove the child from the prospective adoptive parents only with the approval of the court, upon motion by the department or a licensed adoption agency after notice to the prospective adoptive parents, supported by an affidavit or affidavits stating the grounds on which removal is sought. If the department or a licensed adoption agency refuses to consent to the adoption of a child by the person or persons with whom the department or licensed adoption agency placed the child for adoption, the superior court may nevertheless decree the adoption if it finds that the refusal to consent is not in the best interest of the child."

██ Respondent argues that "Although SSA did attempt, over a period of time to work with Ms. [N] in the adoptive process, she was never considered to be an adoptive placement and adoptive placement papers were never signed." Jinny N. argues the SSA had indeed placed Teresa with her for purposes of adoption within the meaning of Civil Code section 224n, at least by the time it moved to intervene in her adoption petition. We agree with Jinny N.

██ Civil Code section 224n does not define exactly what constitutes a placement for adoption. The SSA contends—and the trial court found—that formal adoption placement papers must be signed before a foster child may be said to have been "placed for adoption." Common sense tells us, however, that a placement can originally have one purpose—i.e., foster care—and metamorphose into an adoptive placement, even absent formal paperwork. The intent of the parties must surely be evaluated, along with the objective indicia of adoption proceedings.

██ It is uncontested that Teresa was originally placed with Jinny N. as a foster child, not for adoption. But on February 7, 1986, the SSA directly asked Jinny N. to apply to adopt the child. This is not a case of an overly attached foster parent failing to appreciate her limited role as caretaker. The SSA repeatedly wrote Jinny N. directly or through counsel, urging and offering to help complete adoption. When Jinny N. amended her petition to reflect an agency adoption, *the SSA did not object,* nor did its attorney. How could they? Why should they? All the prerequisites the agency specified had been met, and the petition had been filed at its behest. No talismanic words or documents were required at that point to cement petitioner's rights. She had every reason to think of herself as a prospective adoptive mother. It is preposterous to argue that even after February 1986, Teresa was not "placed for adoption" in petitioner's home, but instead floated in some sort of legal limbo.[4]

---

[4] At various junctures in its brief, the SSA seems to equate its joining in an agency petition with placing a child for adoption. The two are not synonomous. As we have stated, *supra,* the SSA was not required to join in the agency petition. (Civ. Code, § 224n.) The petition must be filed by the prospective adoptive parents selected by the agency, who may file even before relinquishment of the child to the agency by its biological parents. (*San Diego County Dept. of Pub. Welfare* v. *Superior Court* (1972) 7 Cal.3d 1, 14-15 [101 Cal.Rptr. 541, 496 P.2d 453].) Obviously the agency's concurrence is infinitely preferable for a host of reasons, but it is not mandated. (Civ. Code, § 224n.)

Even if the SSA's joining in the agency petition *were* required before that document could be filed, petitioner would prevail. The SSA set forth the conditions under which it would concur, and those conditions were met. The petition was filed, and the SSA entered no timely objection. Only when a change in circumstance caused a social worker to rethink the adoption did it belatedly claim petitioner had acted without its acquiescence—a contention all the correspondence contradicts. That the SSA no longer wishes it *had* joined, and does not *now* wish to join, does not mean it *never* joined. Under such an interpretation the SSA could always

Whether a child has been placed for adoption with a foster parent can be a difficult question. The foster parent's simply wishing it so is not enough, or the line between foster care and adoptive placement would become hopelessly blurred. But where, as here, the agency verifiably solicits, nurtures, and confirms an adoptive placement, the mere lack of what the agency deems to be a necessary final document cannot deprive the would-be parent of all statutory protection. To say otherwise would be in a roundabout way to require agency consent for all adoption finalizations, a position rejected in *Adoption of McDonald* (1954) 43 Cal.2d 447 [274 P.2d 860], and later codified as the last sentence of Civil Code section 224n, subdivision (a). The trial court erred in holding that the signing of an adoptive placement agreement was a prerequisite to changing Jinny N.'s status from a foster mother to a prospective adoptive parent.

Jinny N. must be afforded her due process and statutory rights to have her agency adoption petition considered at a full hearing, with the opportunity to challenge the SSA's attempt to remove Teresa from her home. (*C. V. C.* v. *Superior Court, supra,* 29 Cal.App.3d 909; Civ. Code, § 224n.) If the SSA can show Jinny N. should not be allowed to adopt Teresa— although the agency has found her competent to care for Teresa these last *four years*—it will have the opportunity to make that showing. Of course, petitioner will have the benefit of Welfare and Institutions Code section 366.25, subdivision (g), which gives preference for adoption to the foster parent over all others if the child has substantial emotional ties to that person and removal from her home would be seriously detrimental to the child's well being.

Our holding does not mean, as the SSA suggests, that henceforth all adoptions in progress will have to be approved no matter what horrible information surfaces during the petition process. It does mean that the SSA cannot so easily defeat a prospective adoptive parent's right to have a court consider her pending adoption petition, and decide whether Teresa's best interests are served by severing her relationship with Jinny N.

The issuance of a peremptory writ in the first instance is proper. Jinny N. gave notice to real party and respondent of her request for a peremptory writ when she filed her petition. Real party was invited to respond and did so. The issuance of an alternative writ would add nothing to these proceedings. (*Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178-179 [203 Cal.Rptr. 626, 681 P.2d 893].)

circumvent the express protections afforded prospective adoptive parents under Civil Code section 224n, subdivision (a), merely by reserving its formal joinder in the petition until it decided to oppose adoption. The prospective parents would then have no recourse to judicial review.

Let a writ of mandate issue directing the superior court to (1) vacate its order dismissing Jinny N.'s agency adoption petition, (2) reinstate the petition, and (3) enter a new order denying the SSA's motion to dismiss the petition.

Crosby, J., and Smallwood, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.