[No. D043235. Fourth Dist., Div. One. June 28, 2004.]

In re A.O. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
SONJA A., Defendant and Appellant.

1056

**COUNSEL**

Craig E. Arthur, under appointment by the Court of Appeal, for Defendant and Appellant.

John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Gary C. Seiser, Deputy County Counsel, for Plaintiff and Respondent.

Alice C. Shotton, under appointment by the Court of Appeal, for Minors.

**OPINION**

**O'ROURKE, J.**—Sonja A. appeals orders under Welfare and Institutions Code section 387[1] removing her granddaughters, A.O. and I.O., from her custody. She challenges the sufficiency of the evidence supporting the sections 387 petitions and removing her granddaughters from her custody. Alternatively, she asserts the court erred when it did not find the San Diego County Health and Human Services Agency (the Agency) abused its discretion by removing her grandchildren. We affirm the orders.

---

[1] All statutory references are to the Welfare and Institutions Code, unless otherwise specified.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 1999, the Agency removed the children from their parents' custody and filed section 300 petitions on their behalf. The petitions alleged the children's parents used drugs and were unable to care for them as evidenced by the children's excessive absences from school, chronic head lice, and dirty and unkempt states. Since their removal, the children have lived with their maternal grandparents, Sonja and Edwin A. Parental rights were terminated in July 2001 and the court ordered a permanent plan of adoption. The grandparents were the prospective adoptive parents.

In July 2002, the Agency received a referral that Edwin was abusing illegal substances and was verbally abusive to the people in the home. Further, the children's biological mother, K.S., had been living in the home. When the social workers came to the home, they believed Sonja was under the influence of drugs. She also admitted to a recent domestic violence incident with Edwin. As a result, the Agency placed the adoptive home study on hold, offered mental health support services, ordered drug testing for the grandparents, and requested each grandparent complete a psychological evaluation.

In July 2003, the Agency received a report that Sonja was not disciplining the children, had a multiple personality disorder, had been exposing herself to the neighbors, and beat up a neighbor trying to help the children when Sonja was fighting with K.S. She was verbally abusing other children in the neighborhood. Both she and Edwin were alleged to be abusing drugs. Additionally, K.S. visited the home on a daily basis with different male friends. Consequently, the Agency filed section 387 petitions on behalf of the children. The petitions asserted the placement had been ineffective in protecting 12-year-old A.O. and 10-year-old I.O. because Sonja had engaged in domestic violence with K.S. in the children's presence, Sonja had a mental illness, and the home was in an unsatisfactory condition.

At the September 2003 section 387 petition hearing, the court made true findings on the petitions and found by clear and convincing evidence it was in the children's best interests to be removed from the grandparents' home. The court also found the Agency did not abuse its discretion in removing the children from the grandparents.

## DISCUSSION

### I

### A

Preliminarily, we address the parties' procedural contentions. As discussed by the parties and as is clear from the record, there was procedural confusion

at trial. The confusion apparently originated at the section 366.26 hearing. Although those minute orders are not in our record, the Agency states, and Sonja does not refute, that when the court freed the children for adoption, it placed their exclusive care, custody, and control with the Agency, but also continued their foster placement with the grandparents. Consequently, although the Agency believed it did not have to file section 387 petitions because the children had been freed for adoption, it filed them because of the order continuing the placement. At the hearing on the section 387 petitions, the Agency indicated the petitions were unnecessary but asked the court to rule on the petitions and determine the Agency did not abuse its discretion in removing the children. The court made both rulings.

1

██ Sonja asserts the Agency is estopped from claiming section 387 petitions are unnecessary because it filed those petitions to remove the children. However, the estoppel doctrine applies when the party claiming estoppel is ignorant of the state of the facts as they exist. (*Emma Corp. v. Inglewood School District* (2004) 114 Cal.App.4th 1018, 1030 [8 Cal.Rptr.3d 213].) Here, because the Agency indicated the section 387 petitions were unnecessary, Sonja was not ignorant of the facts. The Agency is not estopped from asserting the petitions were unnecessary.

2

Having concluded the Agency is not estopped from asserting section 387 petitions were unnecessary, we turn to the merits of that contention. Section 387 provides in pertinent part: "An order changing or modifying a previous order by removing a child from the physical custody of a parent, guardian, relative, or friend and directing placement in a foster home, or commitment to a private or county institution, shall be made only after noticed hearing upon a supplemental petition. [¶] (a) The supplemental petition shall be filed by the social worker in the original matter and shall contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the child or, in the case of a placement with a relative, sufficient to show that the placement is not appropriate in view of the criteria in Section 361.3."

██ Because we have neither located nor been cited to any authority addressing whether the Agency must file a section 387 petition after a child is freed for adoption, we look to the language of the statute. " 'Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' [Citations.] 'We begin by examining the statutory language, giving the words their usual and ordinary meaning.'

[Citations.]" (*Park Medical Pharmacy v. San Diego Orthopedic Associates Medical Group, Inc.* (2002) 99 Cal.App.4th 247, 250–251 [120 Cal.Rptr.2d 858].) If the language is clear, effect is given to its plain meaning. (*Mutual Life Ins. Co. v. City of Los Angeles* (1990) 50 Cal.3d 402, 412 [267 Cal.Rptr. 589, 787 P.2d 996].)

■ Here, the plain language of section 387 states the Agency files a petition under that section when it seeks to place the child in a foster home or commit the child to an institution. (§ 387; Cal. Rules of Court, rule 1430(c)(1)–(7)) [the purpose of a section 387 petition is to place a child in a more restrictive level of custody, such as with a person entitled to legal custody, a noncustodial parent, a relative or friend, or a foster home, or in a private institution, county institution, or the California Youth Authority].) However, if the child needs to be placed in a foster home or an institution, parental rights are not terminated. (§§ 366.21, subd. (g)(3), 366.26, subd. (c)(1)(C).) Contrarily, when a child is adoptable and no exceptions to terminating parental rights exist, the court must select adoption as the permanent plan (§ 366.26, subd. (c)(1)) and the Agency would not be seeking to place the child in foster care[2] or an institution as a permanent placement. Because the placement sought by a section 387 petition is not an adoptive home, such a petition is not intended to be used once parental rights have been terminated.

■ Further, a section 387 petition must allege the previous placement has not been effective in protecting the child or a relative placement is no longer appropriate in light of the section 361.3 criteria. Although the purpose of the dependency scheme is to protect a child from parents who have harmed or are likely to harm them (§ 300.2), once parental rights have been terminated, protecting the child from the parents is typically no longer an issue because they have no right to the care, custody, or control of the child.[3] (§ 366.26, subd. (j); Fam. Code, § 8704.) Likewise, the section 361.3 criteria do not apply after parental rights have been terminated. (See *Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1031, 1033–1034 [111 Cal.Rptr.2d 243].)

■ Citing to *C.V.C. v. Superior* Court (1973) 29 Cal.App.3d 909 [106 Cal.Rptr. 123], Sonja contends section 387 petitions were necessary. However, that case did not require the Agency to file a petition before removing a child freed for adoption from a placement; it required an evidentiary hearing reviewing the decision to remove the child. (*Id.* at p. 915.) Additionally

---

[2] Admittedly, the children here were placed in foster care, but only because the Agency had to place them somewhere while looking for another prospective adoptive home.

[3] We recognize in this instance that, as a practical matter, continued protection remained an issue even after parental rights were terminated because Sonja allowed K.S. to have contact with the children.

*C.V.C. v. Superior Court* was decided 31 years ago under a different statutory scheme and before the Legislature provided the social services agencies with exclusive care, custody, and control over a child freed for adoption. (*Department of Social Services v. Superior Court* (1997) 58 Cal.App.4th 721, 735, fn. 4 [68 Cal.Rptr.2d 239].) According to the Agency, at the section 366.26 hearing, the court referred the children to the Agency for adoptive placement under section 366.26, subdivision (j). Even though the court also continued the placement with the grandparents, the orders vesting exclusive care and control of the children with the Agency necessarily changed any previous placement order. Thus, because the orders referring the children to the Agency for adoptive placement ended the orders placing them with Sonja, the Agency did not have to bring section 387 petitions. However, because the Agency did so and the court issued a ruling on those petitions, it is appropriate for us to review the court's rulings.

B

■ Sonja argues the Agency had to prove that the children had to be removed from her care by clear and convincing evidence. She cites to only one case, which addresses removal from a parent (*In re Paul E.* (1995) 39 Cal.App.4th 996, 1000 [46 Cal.Rptr.2d 289]), and is therefore not on point. When the petitions are filed to remove children from the custody of a relative, the court uses the preponderance of the evidence burden of proof and need not look at less restrictive alternatives. (*In re Jonique W.* (1994) 26 Cal.App.4th 685, 691, 697–698 [31 Cal.Rptr.2d 601].)

II

■ Sonja asserts the evidence was insufficient to support removal under section 387.[4] We review a determination on a section 387 petition to see if substantial evidence supports that finding. (*In re Joel H.* (1993) 19 Cal.App.4th 1185, 1199 [23 Cal.Rptr.2d 878].)

■ Under section 387, the Agency may seek to change a child's placement either because the existing placement is no longer effective in protecting the child or the relative with whom the child had been placed no longer meets the criteria in section 361.3. Under section 361.3, subdivision (a) the court considers several factors to determine whether to place a child with a relative.

---

[4] Sonja implies reversal is warranted because the court did not bifurcate the jurisdictional and dispositional aspects of the section 387 petition. A bifurcated hearing is required in proceedings on a supplemental section 387 petition. (*In re Jonique W., supra,* 26 Cal.App.4th at p. 691.) Here, although the court did not bifurcate the hearing, Sonja did not ask for the hearing to be bifurcated, or object when it was not. Accordingly, she has waived her right to contest it as error here. (*In re Richard K.* (1994) 25 Cal.App.4th 580, 590 [30 Cal.Rptr.2d 575].)

The factors relevant in this matter are:

"(1) The best interest of the child, including special physical, psychological, educational, medical, or emotional needs.

"(2) The wishes of the parent, the relative, and child, if appropriate. [¶] . . . [¶]

"(5) The good moral character of the relative and any other adult living in the home, including whether any individual residing in the home has a prior history of violent criminal acts or has been responsible for acts of child abuse or neglect.

"(6) The nature and duration of the relationship between the child and the relative, and the relative's desire to care for, and to provide legal permanency for, the child if reunification is unsuccessful.

"(7) The ability of the relative to do the following:

"(A) Provide a safe, secure, and stable environment for the child.

"(B) Exercise proper and effective care and control of the child.

"(C) Provide a home and the necessities of life for the child.

"(D) Protect the child from his or her parents. [¶] . . . [¶]

"(H) Provide legal permanence for the child if reunification fails. [¶] . . . [¶]

"(I) Arrange for appropriate and safe child care, as necessary.

"(8) The safety of the relative's home."

The evidence showed Sonja did not meet several of the section 361.3 criteria. She was unable to provide the children with a safe environment.[5] (§ 361.3, subd. (a)(7)(A).) The evidence showed that home was in a "horrible condition," the sink was full of dishes, there were open food containers on the kitchen table, the refrigerator was very dirty, and there was "sticky blue stuff" coming out of the freezer. Sonja was smoking without using an ash tray and was leaving ashes on the living room carpet. The children were infested with lice.[6]

---

[5] Sonja asserts the environment had to be safe because there were no incidents reported for the last four years. However, even assuming Sonja's assertion is true, which is doubtful considering the referral in July 2002, it is irrelevant. The issue is whether the placement is safe now, not whether it has been safe in the past.

[6] Sonja, citing to *In re Paul E., supra*, 39 Cal.App.4th at page 1005, asserts this evidence alone is insufficient to warrant sustaining the section 387 petitions. We need not resolve whether having a dirty house alone would be sufficient as here there were considerably more

Further, when the social worker interviewed Sonja, she swore and had a tirade every few minutes. Neighbors reported she used profanity around young children, became upset for no reason, and exposed herself.[7] Neighbors were also concerned about domestic violence and substance abuse. She was seen snorting drugs. The grandparents had "people in and out of the home like a hotel."

There was also evidence that Sonja was violent and that there was domestic violence in the home. (§ 361.3, subd. (a)(5).) Sonja fought with other people, including beating up a neighbor who expressed concern about the children. She was the victim of domestic violence perpetrated by K.S. and Edwin. Sonja sought to downplay the domestic violence with K.S., asserting the latter was the aggressor. However, the issue is whether any individual residing in the home has a history of violent acts, not simply whether Sonja was the aggressor. Because K.S. frequently spent the night, this is a relevant factor to examine.

Sonja also could not protect the children from K.S. (§ 361.3, subd. (a)(7)(D).) K.S. frequently slept and did drugs at Sonja's house. She also brought lots of other people around, making A.O. uncomfortable.

Sonja did not provide the children with adequate child care, as she left them alone. (§ 361.3, subd. (a)(7)(I).) She also did not exercise proper care over them. (§ 361.3, subd. (a)(7)(B).) She did not discipline them, instead leaving the apartment if either child was screaming. She set no bedtime for the children, allowed them to drink as much coffee and soda as they wanted, let them become infested with lice, allowed them to wear anything they wanted, including thongs and lacy bras, made no rules, allowed them to go to the mall alone, did not make them clean their room, and let them have boyfriends. She let them miss school because they were too tired to go after watching television late at night.

The children wanted to live with the foster mother.[8] (§ 361.3, subd. (a)(2).) A.O. believed that it was best for her to live with her foster parent until she turned 18 because K.S. was in Sonja's home, she got better grades, and did

---

problems than a dirty home. In any event, the dirty conditions reported here were much more significant than a broken lamp socket and dirty wading pool in *In re Paul E*

[7] We agree with Sonja that this evidence by itself, without expert testimony, would not support a conclusion that she had a mental illness. However, the evidence is nonetheless relevant to her ability to provide a safe environment for the children.

[8] Admittedly, the girls also said they wanted to live with their grandparents. However, the record shows that they apparently did so because they were afraid of hurting their grandparents' feelings. Because of the court's ruling, we infer the court found the children's statements that they wished to live with their foster mother to be more credible, a determination we may not reweigh. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52–53 [82 Cal.Rptr.2d 426].)

not have to worry about K.S. She felt safer in her foster home than she did with Sonja and wanted to get on with her life. She was always worrying at Sonja's home. I.O. wanted to live with her foster parent because she was a good role model.

In addition, Sonja could not provide the children with a permanent home because her adoption application had been halted and there is no evidence the Agency would renew the adoption proceedings. (§ 361.3, subd. (a)(7)(H).) The children were freed for adoption in July 2001, 26 months before this hearing. They are entitled to stability now, not at some hypothetical point in the future. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310 [19 Cal.Rptr.2d 544, 851 P.2d 826].) As a whole, these factors constitute substantial evidence supporting the court's finding on the section 387 petitions.[9]

## DISPOSITION

The orders are affirmed.

Haller, Acting P. J., and McIntyre, J., concurred.

---

[9] Sonja also asserts we should reverse the orders because the trial court erred in determining the Agency did not abuse its discretion in removing the children. However, because we have concluded that substantial evidence supports the orders removing the children under section 387, we need not address this argument.